BONNEY MOTOR EXPRESS, INC., et al., Petitioners,

v.

The UNITED STATES of America and the Interstate Commerce Commission, Respondents.

RYDER TRUCK LINES, INC., et al., Petitioners,

v.

The UNITED STATES of America and the Interstate Commerce Commission, Respondents.

Nos. 79–1293, 79–1765.

United States Court of Appeals, Fifth Circuit. Unit B

March 25, 1981.

Carver & Capo, Clyde W. Carver, John J. Capo, Atlanta, Ga., John W. Bryant, Detroit, Mich., Serby & Mitchell, Alan E. Serby, Atlanta, Ga., Hugh T. Matthews, Dallas, Tex., for Steere Tank Lines, Inc. and Texas-Continental Express, Inc.

Alan J. Thiemann, Washington, D. C., for American Trucking Ass'n, Inc.

Phillip Robinson, Austin, Tex., for Central Freight Lines, Central Express, Red Arrow Freight Lines and Brown Express, Inc.

James M. Doherty, Austin, Tex., for J. H. Rose Truck Line, C & H Trans. Co. and C & H Freightways.

Eames, Wilcox, Mastej & Bryant, John W. Bryant, Detroit, Mich., Alan E. Serby, Atlanta, Ga., for Ryder Truck Lines, Inc., et al.

Ellen Efros, Atty., Lawrence H. Richmond, ICC Gen. Counsel, Barry Grossman, U. S. Dept. of Justice, Washington, D. C., for respondents.

Before SIMPSON, RONEY and THOMAS A. CLARK, Circuit Judges.

PER CURIAM:

These consolidated petitions challenge the validity of an Order entered by the Interstate Commerce Commission in a rulemaking proceeding formally entitled Ex Parte No. MC–109, Applications Seeking Substitution of Single-Line Service for Existing Joint-Line Operations. (MC–109).

In substance, the final rules adopted by the Order preclude a competing carrier, which has not participated with the applicant in joint-line service during the one-year period immediately preceding the filing of a substitution application, from opposing the application on the issue of public convenience and necessity. 49 CFR § 1062.-2. Any carrier, however, may protest an application on the ground that the applicant is not fit to render the proposed service. Such fitness opposition may include chal-

lenges concerning the veracity of the applicant's statements filed in support of the application, and the bona fides of the joint-line service sought to be replaced, including the issue of its substantiality. Id.

The issues raised here may be summarized as follows:

(1) Whether the Interstate Commerce Commission's challenged regulations promulgated in Ex Parte No. MC–109 are rational and a proper exercise of the Commission's rulemaking authority?

(2) Whether publication of notice of the proposed regulations was in compliance with the applicable provisions of the Administrative Procedure Act?

(3) Whether the procedures of the single-line application rules deprive interested parties of their right to a fair hearing?

■ The standard of review of this court in actions involving the Interstate Commerce Commission's authority to legislate is the rational basis standard. *See United States v. Allegheny Ludlum Steel Corporation,* 406 U.S. 742, 748–49, 92 S.Ct. 1941, 1946–1947, 32 L.Ed.2d 453 (1972); *Miller Transporters, Inc. v. United States,* 594 F.2d 463, 467 (5th Cir. 1979).

■ Addressing the first issue, petitioners contend that the commission's decision was irrational because it ignored one of the three public convenience and necessity criteria well established by decisional law and first adopted in *Pan American Bus Lines Operations,* 1 MCC 190 (1936), namely whether proposed services can or will be performed as well by existing lines or carriers. *See Chemical Leaman Tank Lines, Inc. v. United States,* 368 F.Supp. 925, 939 (D.Del.1973).

In *North Alabama Exp. Inc. v. United States,* 576 F.2d 679 (5th Cir. 1978), *cert. denied,* 441 U.S. 906, 99 S.Ct. 1995, 60 L.Ed.2d 375 (1979), we recognized this test as important when we said, "In making such determinations (of public convenience and necessity) the commission looks to the adequacy of the existing facilities to meet present or future transportation requirements, the desirability of competition, different kinds of service and of improved service." *North Alabama Exp. Inc. v. United States, supra,* 576 F.2d at 682.

The petitioners are wrong. The commission did consider prior decisional law and the adequacy of existing service and found this factor not to be dispositive in light of the benefits flowing to applicants, shippers, and the public. In the decision accompanying the final rules, the commission stated:

[T]he question that still must be answered is whether existing carriers, other than those which are or have been participating in the joint-line concurrences with applicant, must be afforded the opportunity to oppose such an application based upon the issue of need on a case-by-case basis. We believe not.

It is well-established that the Commission is not precluded from granting new authority even where the services of existing carriers appear to be adequate for the present or future. *United States v. Dixie Highway Express,* 389 U.S. 409, 411 [88 S.Ct. 539, 540, 19 L.Ed.2d 639] (1967).

. . . The traffic which would be transported by the applicant in single-line service is that which it previously handled in joint-line operations. Conceivably a shipper might tender applicant more of its traffic in the single-line service but we do not believe the possible increased participation by applicant could have a substantial destructive effect on the competitive posture of the affected marketplace. Even those carriers which also may have been serving the shipper, and competing with applicant's prior joint-line service were always subject to applicant's competition and the risk that shipper would tender a greater portion of its traffic to the applicant. Clearly existing services are not intended to be immune from competition, and here, where an applicant is already demonstrably a significant competitor for the involved traffic, and where the public would reap obvious benefits from its continued participation in this traffic, no valid purpose would be served by reviewing the opposing evidence of existing carrier on a case-by-

case basis with respect to the issue of public need for the service. To the contrary, under the circumstances involved, such a case-by-case analysis of possible harm to existing carriers would only constitute a wasteful exercise on this Commission's part.

Record Item No. 91, at 12–14.

Not only do we find that the Commission did consider the adequacy of existing facilities, we find that the Commission correctly balanced the interests competing with the interest of existing carriers. As the Commission demonstrated, benefits would flow (1) to applicants, which may have invested substantial capital in terminal facilities and equipment in conjunction with the operations they have performed in joint-line service for the supporting shipper; (2) to shippers who have come to rely upon the service provided by the applicant; and (3) to the consuming public which ultimately must bear the cost of any transportation service. Record Item No. 91 at 5. The Commission also pointed out that the substitution of single-line for joint-line service often engenders significant savings in mileage, fuel, time and paper work, as well as less risk of freight damage and loss. *Id.* at 5–6. These savings and benefits adequately support the rationality of the Commission's regulations in MC–109.

 Petitioners also argue that the MC–109 regulations are violative of the rights of interested persons to submit evidence and intervene in individual applications for motor carrier authority; they maintain that the regulations are unreasonable because non-interlining carriers are not allowed to submit evidence on questions of public convenience and necessity as are interlining carriers and because non-interlining carriers must seek leave to intervene on fitness issues. In our view the law was accurately stated in *Chemical Leaman Tank Lines, Inc. v. United States,* 368 F.Supp. 925 (D.Del. 1973)[1] which asserts:

1. Three-judge statutory court constituted under Title 28 U.S.C. § 2284 as provided by former § 2325 of Title 28 U.S.C.

We do not hold—nor do the plaintiffs insist—that the Commission must afford competing carriers an oral hearing on pending applications for MC–85 authority. We do hold, however, that before such applications can be approved, *the Commission must give notice to competing carriers by some reasonable means*[33] *and they must be granted a reasonable opportunity to submit evidence and argument opposing certification.*

*Chemical Leaman Tank Lines, Inc. v. United States, supra,* 368 F.Supp. at 951 (emphasis added). Footnote 33 to the above quote says that notice by publication in the Federal Register is "reasonable" notice. *Id.*

The regulations under challenge in the instant case meet the *Chemical Leaman* criteria of reasonable notice and reasonable opportunity to present opposing evidence. MC–109 provides that an applicant must publish its application in the Federal Register and identify clearly its proposal as one asking substitution of single-line service for its existing joint-line operations. 49 CFR § 1062.2(b)–(c). Moreover, the regulations state that any carrier may seek intervention on the issue of applicant's fitness to provide the proposed service including challenges concerning the veracity of the applicant's statements filed in support of the application, and the bona fides of the joint-line service sought to be replaced, including the issue of its substantiality. 49 CFR § 1062.2(d)(2). This procedure affords competing carriers reasonable opportunity to submit evidence and argument opposing certification in compliance with *Chemical Leaman's* holding. In addition, by requiring nonparticipating carriers to seek leave to intervene, the regulations do not deprive a competing carrier of a meaningful hearing; they insure that evidence offered in opposition to an application is reliable, probative and material. As the Supreme Court has stated, "the statutory requirement for a hearing . . . does not preclude the Commission from particularizing statutory standards through rulemaking process and bar-

ring at the threshold those who neither measure up to them nor show reasons why in the public interest the rule should not be waived." *Federal Power Comm'n v. Texaco*, 377 U.S. 33, 39, 84 S.Ct. 1105, 1109, 12 L.Ed.2d 112 (1964).

In sum, we find that the rights of interested persons to submit evidence and to intervene in individual applications for motor carrier authority are not violated and that the MC–109 regulations are rational.

 In posing the second issue, "whether publication of notice of the proposed regulations was in compliance with the applicable provisions of the Administrative Procedure Act?", the petitioners argue that the Commission's initial Notice of Proposed Rulemaking gave no indication of any intent to change the method by which protests of interested persons will be handled once the agency has determined that a carrier's protest will be allowed. A similar contention as to the EPA was disposed of in *American Iron & Steel Inst. v. Envir. Prot. Agency*, 568 F.2d 284 (3rd Cir. 1977) where the court stated:

> [T]he submission of a proposed rule for comment does not of necessity bind an agency to undertake a new round of notice and comment before it adopts a rule which is different—even substantially different—from the proposed rule. As we have noted above, the adequacy of the notice must be tested by determining whether it would fairly apprise interested persons of the "subjects and issues" before the Agency.

*American Iron & Steel Inst. v. Envir. Prot. Agency, supra*, 568 F.2d at 293. We agree with our sister Circuit. The initial Notice of Proposed Rulemaking included in this record demonstrates that it fairly apprised interested persons of the "subjects and issues" before the ICC. This argument lacks merit.

The final issue questions whether the single-line application rules deprive interested parties of their right to a fair hearing. In essence, the petitioners contend that their right to discovery is practically eliminated by the thirty day rule of 49 CFR § 1062.-2(d)(3) which prevents them from developing material issues of disputed facts and curtails their right to cross-examination under 49 CFR § 1100.51(a) thus violating due process. We do not find this argument persuasive.

 The ICC in conducting a full and fair hearing, need only consider the submission of written evidence, as distinct from oral testimony elicited on cross-examination. *Subler Transfer, Inc. v. United States*, 396 F.Supp. 762, 764 (S.D.Ohio 1975).[2] In the instant case, the verified statement required upon submission of the application by 49 CFR § 1062.2 obviates the need for discovery in most cases. Nevertheless, if there is good cause for further discovery then request under 49 CFR § 1100.55 is still available. Request for cross-examination under 49 CFR § 1100.51 is also available for materially disputed facts, which we believe can be sufficiently developed by submission of written statements.

We do not decide here the effect of the Motor Carrier Act of 1980 on the validity of MC–109. The ICC has apparently withdrawn the Rule in light of the new Act, although it is still applying the Rule in certain ongoing proceedings. Further consideration of the Rule in light of the new Act will await appeals, if any, from these application proceedings.

Petition to Review DENIED in No. 79–1293.

Petition to Review DENIED in No. 79–1965.

---

**2.** Also decided by a three-judge statutory court. See Note 1.