762 F.2d 1561
 10 Soc.Sec.Rep.Ser. 25, Medicare&Medicaid Gu 34,657
LLOYD NOLAND HOSPITAL AND CLINIC, Plaintiff-Appellee,
v.
Margaret M. HECKLER, Secretary of Health and Human Services,
Defendant- Appellant.
METROPOLITAN HOSPITAL, INC., a Georgia Corporation, Plaintiff-Appellee,
v.
Margaret M. HECKLER, Secretary of Health & Human Services,
Defendant-Appellant.
 Nos. 84-7444, 84-8699.
 United States Court of Appeals,
Eleventh Circuit.
 June 12, 1985.
 
 Frank W. Donaldson, U.S. Atty., Herbert J. Lewis, III, Asst. U.S. Atty., Birmingham, Ala., Barbara C. Biddle, Dept. of Justice, Appellate Staff, Civ. Div., Anthony J. Steinmeyer, Washington, D.C., for defendant-appellant.
 Ober, Grimes & Shriver, Margaret Manning, Leonard C. Homer, Carel T. Hedlund, Baltimore, Md., for plaintiff-appellee in No. 84-7444.
 Nina Loree Hunt, Asst. U.S. Atty., Atlanta, Ga., for defendant-appellant in No. 84-8699.
 Richard L. Shackelford, Glen A. Reed, Atlanta, Ga., for plaintiff-appellee in No. 84-8699.
 Appeal from the United States District Court for the Northern District of Alabama.
 Appeal from the United States District Court for the Northern District of Georgia.
 Before KRAVITCH, HATCHETT and WRIGHT*, Circuit Judges.
 EUGENE A. WRIGHT, Circuit Judge:
 
 
 1
 In this consolidated appeal, we must determine if the new malpractice insurance premium rule was promulgated in violation of the Administrative Procedure Act (APA), 5 U.S.C. Sec. 500 et seq., or the Medicare Act (Act), 42 U.S.C. Sec. 1395 et seq. We first address jurisdiction.
 
 FACTS
 
 2
 Until recently amended, the Medicare Act required that participating providers be reimbursed their reasonable costs for services.[1] 42 U.S.C. Sec. 1395f(b)(1) (1979). Reasonable costs are those actually incurred, excluding costs unnecessary for efficient delivery of health care. 42 U.S.C. Sec. 1395x(v)(1)(A). Reasonable costs are to be determined by regulations promulgated by the Secretary of Health and Human Services (HHS). Id.
 
 
 3
 The Secretary initially adopted the standard accounting method of allocating costs according to usage. See 31 Fed.Reg. 14808 (Nov. 23, 1966), promulgating 20 C.F.R. Sec. 405, Subpart D (1966). The theory underlying this method of cost accounting is that the differences allocable primarily to one patient population or the other average out across the population and across the cost year.
 
 
 4
 General and administrative (G & A) costs include such items as costs of admissions, billing, workers' compensation and fire, casualty, accident and malpractice insurance. Under the preexisting system, G & A costs were grouped into a "cost center", such as the emergency room. Medicare then reimbursed the provider for a portion of each cost center's G & A, based on the Medicare patient utilization rate for that center.
 
 
 5
 In 1979, concerned with the cost of malpractice insurance, the Secretary issued a proposed new rule for public comment. It provided that hospitals which had paid malpractice claims within the previous five years would be reimbursed based on the ratio of claims paid to Medicare patients to the total claims paid in those five years and hospitals with no five-year claims history would be reimbursed using actuarial estimates of Medicare's share of malpractice costs. 44 Fed.Reg. 15744-45 (March 15, 1979).
 
 
 6
 The final rule (the malpractice rule) retained the five-year claims ratio in those hospitals with a five-year claims history and used a national ratio which supposedly reflects average national loss experience for those hospitals without a five-year claims history. 44 Fed.Reg. 31641-42, codified at 42 C.F.R. Sec. 405.452(b)(1)(ii) (1979).[2] The national ratio is 5.1%.
 
 
 7
 Noland Hospital's Medicare patient utilization rate was approximately 32% for the cost year ending in 1980. Under the standard accounting reimbursement method, it should have received 32% of its malpractice premiums. Instead, it received Medicare reimbursement for its malpractice premiums under the national ratio of 5.1% because the hospital had no malpractice losses during that year or the previous four years. The amount at issue is $13,191.
 
 
 8
 Metropolitan Eye & Ear Hospital (Metropolitan) had a Medicare patient utilization rate of approximately 42% for the cost year ending in 1980. It would have been reimbursed approximately 42% of its premiums under the old rule. It also received Medicare reimbursement under the 5.1% national ratio. The amount at issue is $10,626.
 
 
 9
 Both hospitals brought their disputes before the Provider Reimbursement Review Board (PRRB), which is designed to resolve technical reimbursement disputes. The PRRB determined that it did have authority to adjudicate these challenges to the regulations. 42 U.S.C. Sec. 1395oo(f)(1). After certification from the PRRB, both Noland and Metropolitan challenged the malpractice rule in the district courts. Both courts granted plaintiffs' summary judgment motions.
 
 JURISDICTION
 
 10
 The district court and this court on appeal have raised the jurisdictional issue. The Act requires suit be filed within 60 days of agency action. 42 U.S.C. Sec. 1395oo(f)(1). Lloyd Noland Hospital and Clinic (Noland) filed its action 63 days after the agency decision was rendered but within 60 days after receipt of notice of that decision. The notice said that this action could be filed 60 days after receipt.
 
 
 11
 The district court held that the 60-day statutory provision is a statute of limitation, comparable to that in the Social Security Act. The Secretary waived this defense by not timely raising it. Alternatively, the letter tolled the filing period until 60 days from receipt.
 
 
 12
 If this 60-day period is jurisdictional, we must dismiss Noland's action. See Victory Carriers, Inc. v. Law, 404 U.S. 202, 212, 92 S.Ct. 418, 425, 30 L.Ed.2d 383 (1971) (jurisdiction is confined to the precise limits defined by a federal statute), reh'g denied, 404 U.S. 1064, 92 S.Ct. 731, 30 L.Ed.2d 753 (1972). See also Owen Equipment & Erection Co. v. Kroger, 437 U.S. 365, 374, 98 S.Ct. 2396, 2403, 57 L.Ed.2d 274 (1978). The parties may not expand our jurisdiction by express consent, conduct or estoppel. 13 C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure Sec. 3522 at 66-67 (2d ed. 1984). See American Fire & Cas. Co. v. Finn, 341 U.S. 6, 17-18, 71 S.Ct. 534, 541-42, 95 L.Ed. 702 (1951).
 
 
 13
 We are persuaded that the 60 days is a statute of limitation. The filing time within the Social Security Act is a statute of limitation, Mathews v. Eldridge, 424 U.S. 319, 328 n. 9, 96 S.Ct. 893, 899 n. 9, 47 L.Ed.2d 18 (1976); Weinberger v. Salfi, 422 U.S. 749, 763-64, 95 S.Ct. 2457, 2465-66, 45 L.Ed.2d 522 (1975), and both acts have similar appeals provisions. Compare 42 U.S.C. Sec. 405(g) with 42 U.S.C. Sec. 1395oo(f)(1). See V.N.A. of Greater Tift County, Inc. v. Heckler, 711 F.2d 1020, 1024 & n. 6 (11th Cir.1983), cert. denied, --- U.S. ----, 104 S.Ct. 1908, 80 L.Ed.2d 457 (1984). We have subject matter jurisdiction over both appeals.
 
 SCOPE OF REVIEW
 
 14
 Under the Medicare Act, judicial review is defined by the APA. 42 U.S.C. Sec. 1395oo(f). The APA directs an agency's decision be overturned if it is unsupported by substantial evidence in the record, 5 U.S.C. Sec. 706(2)(E), or arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. Id. Sec. 706(2)(A).
 
 
 15
 The standard of review is narrow and this court will not substitute its judgment for that of the agency. Citizens to Preserve Overton Park v. Volpe, 401 U.S. 402, 416, 91 S.Ct. 814, 823, 28 L.Ed.2d 136 (1971). We must determine whether the decision was based on a consideration of the relevant factors and whether there was a clear judgment error. Motor Vehicle Mfrs. Ass'n v. State Farm Mutual Automobile Ins. Co., 463 U.S. 29, 43, 103 S.Ct. 2856, 2867, 77 L.Ed.2d 443 (1983).
 
 ANALYSIS
 A. Notice
 
 16
 The Metropolitan court concluded that the notice of the proposed rulemaking failed to sufficiently identify the Westat study.[3] This prevented affected persons from offering meaningful comments on the proposed rule. Actual notice to some did not cure this deficiency.
 
 
 17
 The APA provides that general notice of proposed rulemaking must be published in the Federal Register, unless actual notice is given to regulated entities. APA, 5 U.S.C. Sec. 553(b). Notice must include either the terms or substance of the rule or a description of the subject and issues. Id. Sec. 553(b)(3). When a proposed rule is based on scientific data, the agency should identify the data and methodology used to obtain it. United States v. Nova Scotia Food Products Corp., 568 F.2d 240, 251 (2d Cir.1977).
 
 
 18
 The original notice cited only a "study conducted by an HEW consultant...." 44 Fed.Reg. 15745. The study was later identified in the final rule as the Medical Malpractice Closed Claims Study--1976 (the Westat study). 44 Fed.Reg. 31641 (June 1, 1979). This notice alone is inadequate. See Portland Cement Ass'n v. Ruckelshaus, 486 F.2d 375, 393-94 (D.C.Cir.1973) (agency cannot promulgate rules based on data known only to the agency), cert. denied, 417 U.S. 921, 94 S.Ct. 2628, 41 L.Ed.2d 226 (1974).
 
 
 19
 The purpose of notice under the APA is to disclose the thinking of the agency and the data relied on. Home Box Office, Inc. v. FCC, 567 F.2d 9, 35 (D.C.Cir.), cert. denied, 434 U.S. 829, 98 S.Ct. 111, 54 L.Ed.2d 89 (1977). Notice is adequate if "it affords interested parties a reasonable opportunity to participate in the rulemaking process." Forester v. Consumer Product Safety Comm'n, 559 F.2d 774, 787 (D.C.Cir.1977). Accord Bonney Motor Express, Inc. v. United States, 640 F.2d 646, 650 (5th Cir.1981).
 
 
 20
 The Secretary sent copies of the study to three hospital organizations which represented 7,520 hospitals. Based on the number and relative uniformity of responses,[4] actual notice was sufficient. See Common Carrier Conference v. United States, 534 F.2d 981, 982-83 (D.C.Cir.) (actual knowledge by most interested parties sufficient to cure notice defects), cert. denied, 429 U.S. 921, 97 S.Ct. 317, 50 L.Ed.2d 288 (1976); accord, Abington Memorial Hospital v. Heckler, 576 F.Supp. 1081, 1085 (E.D.Penn.1983), aff'd, 750 F.2d 242 (3d Cir.1984). We agree with the district court in the Noland case on this issue and disagree with the district court in the Metropolitan case.[5]
 
 B. Basis and Purpose Statement
 
 21
 Both district courts held that the Secretary's basis and purpose statement was inadequate. The Secretary had not responded adequately to the criticisms of the Westat study and had ignored comments by the hospital industry that insurance costs include administrative expenses as well as costs of claims paid.[6] Finally, the courts noted that response to 600 critical letters is impossible in two short columns in the Federal Register. See 44 Fed.Reg. 31641-42.
 
 
 22
 The APA requires the agency to incorporate into a new rule a concise general statement of its basis and purpose. 5 U.S.C. Sec. 553(c). The statement may vary, but should fully explain the factual and legal basis for the rule. S.Rep. No. 752, 79th Cong., 1st Sess. 14 (reprinting Senate Judiciary Committee Print of June 1945), reprinted in Administrative Procedure Act: Legislative History, S.Doc. No. 248, 79th Cong., 2d Sess. 11, 20 (1946). The Secretary persuasively argues that length is not indicative of insufficiency because the adverse comments varied little, being patterned after the American Hospital Association's suggested form letter.
 
 
 23
 The Secretary asserts that comments adverse to the Westat study repeated irrelevant limitations contained in the study itself. See Home Box Office, Inc., 567 F.2d at 35 n. 58 (irrelevant objections require no comment). These objections are relevant and form the basis for our holding, in the next section, that the malpractice rule is arbitrary. See Walter O. Boswell Memorial Hospital v. Heckler, 749 F.2d 788, 796-97 (D.C.Cir.1984); Abington, 576 F.Supp. at 1086-87. The Secretary failed to respond to the comments that the Westat study was unreliable and that the authors cautioned against generalizing from its limited data.
 
 
 24
 Next the Secretary argues she did address the hospitals' comments that premiums are not based on claims paid. The preamble states: "[w]e are aware that insurance companies generally do not determine insurance rates for malpractice insurance based upon the financial status of the patients," 44 Fed.Reg. at 31642, and that premiums are "incurred primarily for the benefit of the total overall patient population and for the protection of facility assets." Id. at 31641. She continues that drawing a conclusion contrary to the comments does not mean they were not considered.
 
 
 25
 This does not address the reason that the statement is inadequate. Basis and purpose statements must enable the reviewing court to see the objections and why the agency reacted to them as it did. Automotive Parts & Accessories Ass'n v. Boyd, 407 F.2d 330, 338 (D.C.Cir.1968). Additionally, an agency should rebut vital relevant comments. Western Coal Traffic League v. United States, 677 F.2d 915, 927 (D.C.Cir.1982), cert. denied, 459 U.S. 1086, 103 S.Ct. 568, 74 L.Ed.2d 931 (1982).
 
 
 26
 The statement failed to give the facts underlying the conclusion that malpractice premiums bias a once balanced G & A pool. See Walter O. Boswell, 749 F.2d at 795. It also failed to discuss adequately the Westat study flaws. See id. at 796-97; St. James Hospital v. Heckler, 760 F.2d 1460, at 1469-1470 (7th Cir. 1985). Finally, it did not consider reasonably obvious alternatives. See Walter O. Boswell, 749 F.2d at 797-98; NAACP v. FCC, 682 F.2d 993, 998 (D.C.Cir.1982).
 
 
 27
 On this issue, we affirm both district courts. The Secretary's response to the comments was inadequate.
 
 
 28
 The Noland court also held that, because the rule was promulgated in its final form before the 60-day comment period ended, the Secretary failed to adequately consider the comments. The court's concern is that budgetary pressures, rather than reason, underlay the new regulations. Under this analysis, the regulation would be arbitrary and capricious in violation of the APA Sec. 706(2)(A).
 
 
 29
 The Secretary responds that budgetary pressures are a proper concern. Because the rule originally called for a 45-day response period, most comments were received in 45 days. Internal debate proceeded during that period and at least one provision of the rule was changed in response to complaints. Under the circumstances of this case, finalizing the rule before the comment procedure was complete and promulgating it on the 60th day does not violate the APA.[7]
 
 C. The Study
 
 30
 The courts found that reliance on the Westat study rendered the agency action arbitrary and capricious and a clear error of judgment in violation of section 706(2)(A) of the APA. Both relied on statistical reservations expressed by the study's authors.
 
 
 31
 The Secretary argues that: (1) because the old formula was not based on any study, the new formula need not be based on a perfect one; (2) the new formula is not dependent on the Westat study but is supported by self-evident assumptions about Medicare; and (3) the study is not flawed because the author's reservations concerned inapplicable parts of the study.
 
 
 32
 The Secretary's first argument is unpersuasive. Nothing requires the agency to rely on a study. However, an agency must supply a reasoned analysis to change from a settled rule. Motor Vehicle Mfrs. Ass'n, 463 U.S. at 42, 103 S.Ct. at 2866.
 
 
 33
 The Secretary relies on common knowledge and common sense. Malpractice rates had skyrocketed, becoming a major portion of health care expense. Medicare and Medicaid were reimbursing approximately 48% of hospital malpractice premiums, but Medicare and Medicaid patients received only about 12.6% of awards. Because Medicare patients are 65 or older, they tend to recover less. Insurance premiums, reflecting risk, are based in large part on estimated claims payments.
 
 
 34
 We cannot validate this regulation on the Secretary's logic alone because she relied specifically on the Westat study in the preamble to the proposed rule, see 44 Fed.Reg. at 15745, and in an internal Option Paper which first outlined the new regulation. The Secretary's logic is also contradicted by the insurance industry and hospitals. Evidence shows that risk is based on patient days, not awards, a fact supporting the old regulation. Administrative costs, tied more to number of claims, account for at least 40% of malpractice insurance.
 
 
 35
 Underlying the Secretary's entire logical structure is the premise that the G & A pool was skewed against the government by the inclusion of malpractice insurance premiums. A study conducted by HHS contradicts this conclusion. Failing to demonstrate that insurance premiums imbalance a balanced G & A pool is arbitrary and capricious. See Walter O. Boswell, 749 F.2d at 798-99.
 
 
 36
 It is also an abuse of discretion to base a regulation on faulty data. Almay, Inc. v. Califano, 569 F.2d 674, 682 (D.C.Cir.1977) (agency failed to consider comments of study director questioning statistical integrity of results). The study is flawed in at least two critical respects.
 
 
 37
 First, only 20% of the study's claim dollars represented hospital claims. Westat studied claims occurring in hospitals. To generalize claims against hospitals requires a higher correlation between occurrences in hospitals and claims against hospitals. Further data may show that a higher proportion of Medicare claims are filed against hospitals. Accord St. James Hospital v. Heckler, at 1467-1469.
 
 
 38
 Second, the sample size is too small and the number of non-responses too high for the assumptions the Secretary makes based on the resulting statistics.[8] The October 20, 1978, Foreword to the study's synopsis notes: "Although this study provides useful information on malpractice claims closed in one year, it does not provide data on the total incidence of malpractice. Thus, no broad conclusions can be drawn about the nature and extent of medical malpractice in this country." The authors were even more critical of generalizing from the statistics in a later report to HHS. See Walter O. Boswell, 749 F.2d at 793 n. 5.
 
 
 39
 We conclude that basing this departure from standard accounting on the Westat study is arbitrary and capricious.
 
 D. The Medicare Act
 
 40
 The lower courts held that the formula was in violation of the Medicare Act, which requires that hospitals be reimbursed for the actual cost of services and that costs not be shifted to non-Medicare patients. See 42 U.S.C. Sec. 1395x(v)(1)(A). Deference is particularly appropriate here because we are interpreting a complex act which delegates considerable rulemaking authority to the Secretary. See Schweiker v. Gray Panthers, 453 U.S. 34, 43, 101 S.Ct. 2633, 2640, 69 L.Ed.2d 460 (1981); but see St. James Hospital, at 1470 (less deference due Secretary under Medicare Act reimbursement provisions than under Social Security Act benefit provisions). We do not, of course, abdicate our judicial responsibility to review this agency action. Pacific Coast Medical Enterprises v. Harris, 633 F.2d 123, 131 (9th Cir.1980).
 
 
 41
 Noland first argues that the regulation does not provide for payment of reasonable costs because segregating insurance costs skews the G & A pool in Medicare's favor. It then no longer pays its reasonable costs.
 
 
 42
 The agency record included evidence that there would be a net increase in Medicare G & A reimbursements if a discrete costing system was utilized in all possible areas. As did the district court, we recognize the logic in Noland's argument. However, we must affirm the district court's ruling that there is insufficient evidence to establish that the malpractice rule has disrupted the averaging scheme.
 
 
 43
 The Noland court also held that failure to follow traditional methods of reimbursement is not contrary to the Act. The Secretary is given broad latitude in determining costs, but is required to consider the principles generally applied by national organizations or established pre-payment organizations. 42 U.S.C. Sec. 1395x(v)(1)(A). In view of the agency's broad power to use "different methods in different circumstances," id., we must affirm the Noland court on this issue.
 
 
 44
 Noland also challenges the malpractice rule as failure to reimburse the "cost actually incurred." 42 U.S.C. Sec. 1395x(v)(1)(A). The D.C. Circuit considered these claims under the APA and concluded that the Secretary had not acted arbitrarily. Walter O. Boswell, 749 F.2d at 798-802. That court noted tension between the statutory requirements of reimbursing actual costs and avoiding cost-shifting because insurance premiums reflect both exposure and actual claims. Id. at 800.
 
 
 45
 Relying on the agency record, the Noland court noted that premiums are largely determined on utilization, that losses paid have little relationship to actual cost of insurance, and that insurance cost is a necessary expense for hospitals. It concluded that because the new rule ties reimbursement to a factor bearing little relationship to cost, the malpractice rule violates the Act's prohibition against cost shifting and fails to reimburse actual cost.
 
 
 46
 Because we hold that the malpractice rule is arbitrary and capricious in violation of the APA, we need not reach this issue. Accord Humana of Aurora, Inc. v. Heckler, 753 F.2d 1579, 1583 (10th Cir.1985).
 
 REMEDY
 
 47
 The Secretary has asked that we direct the district courts to remand to her for further rulemaking should we invalidate this rule. We decline.
 
 
 48
 Both district courts invalidated the malpractice rule. The effect was to reinstate the prior method of reimbursement. Accord Abington Memorial Hospital v. Heckler, 750 F.2d 242, 244 (3rd Cir.1984) (until invalidated by a court or replaced with a valid new regulation, prior regulation remains effective). The Metropolitan court remanded to the Secretary for further proceedings not inconsistent with its opinion. The only proper result is to pay the hospital according to existing regulations.
 
 
 49
 The hospitals seek reimbursement for the fiscal year 1979-80. Four years is long enough for them to wait. Accord id. at 244 n. 3.
 
 CONCLUSION
 
 50
 The malpractice rule is arbitrary and capricious in violation of the APA. 5 U.S.C. Secs. 706(2)(A) & (C). It was promulgated in violation of 5 U.S.C. Sec. 553(c).
 
 
 51
 We remand to the PRRB for payment of the hospital's insurance costs pursuant to 42 C.F.R. Sec. 405.452(b)(1) (1979), without reference to the malpractice rule, 42 C.F.R. Sec. 405.452(b)(1)(ii) (1979).
 
 
 52
 AFFIRMED as modified.
 
 
 
 *
 Honorable Eugene A. Wright, U.S. Circuit Judge for the Ninth Circuit, sitting by designation
 
 
 [1]
 Because of recent Social Security Amendments, most costs at issue in these cases are those reported prior to October 1, 1986. After 1986, only a small number of hospitals will be reimbursed under the reasonable cost system. Walter O. Boswell Memorial Hospital v. Heckler, 749 F.2d 788, 791 n. 3 (D.C.Cir.1984)
 
 
 [2]
 Intervening amendments to the Medicare regulations have caused renumbering. The malpractice rule is now found at 42 C.F.R. Sec. 405.452(a)(1)(ii) (1984)
 
 
 [3]
 This study was commissioned by the Secretary to provide general information on malpractice costs for all patients. It was a consensus of malpractice claims against hospitals and physicians paid by nine of the largest malpractice insurance carriers between July 1 and October 31, 1976. Approximately 84% of all malpractice claims closed in the United States during those four months were covered by the study
 
 
 [4]
 Approximately 600 comments uniformly critical of the proposed rule were submitted by health care institutions, consumers, major accounting firms, insurance companies, risk managers, nurses, health care consultants, actuaries, physicians, and Medicare beneficiaries. The comments broke down into seven major points: (1) it is unfair to break out one overhead cost which favors Medicare and not break out other costs which favor private patients; (2) the paid-loss ratio would fluctuate from year to year, causing erratic reimbursements and potential financial problems for hospitals; (3) the new formula would encourage fraud; (4) the Westat study is statistically flawed; (5) malpractice insurance protects hospitals' assets, benefiting all patients equally; (6) insurance companies set premiums on the basis of overall assessment of risk, not related to type of patient; and (7) the necessary accounting would be too complex and expensive
 
 
 [5]
 This does not affect the outcome because we affirm the essential holdings of both district courts
 
 
 [6]
 Responding to the adverse comments, the preamble to the final rule provided: (1) an exception to the general G & A accounting method is warranted for medical malpractice premiums because malpractice costs are so significant and are disproportionately borne by Medicare; (2) reimbursement would eventually reflect Medicare's malpractice claim experience and would therefore not be erratic; (3) outside pressures, such as attorneys and insurance companies, would prevent fraud by the hospitals; (4) the new rule is justified because it is a direct calculation of the costs incurred in furnishing health care to Medicare beneficiaries; (5) it is fair because it accurately reflects costs incurred in furnishing health care to Medicare beneficiaries; (6) because of the difficulty in conducting individual actuarial studies for each hospital without a five-year claims history, that proposal was replaced with the national claims payment ratio. 44 Fed.Reg. at 31642
 
 
 [7]
 Disagreeing with the Noland court on this issue has no effect. That court carefully set out sufficient other grounds on which to hold this regulation is arbitrary and capricious
 
 
 [8]
 It was unknown in 1,295 of the 3,932 compiled claims whether or not the patient was covered by Medicare. Further, the study notes that the sample size is too small to generalize that Medicare patients suffer less economic loss. Exclusion of self-insured hospitals was noted as another potential source of statistical bias