ALBANY GENERAL HOSPITAL, Ashland Community Hospital, Bay Area Hospital, Douglas Community Hospital, Eastmoreland General Hospital, Forest Glen Hospital, Good Samaritan Hospital, Grand Ronde Hospital, Holladay Park Hospital, Lebanon Community Hospital, Merle West Medical Center, Newberg Community Hospital, Providence Hospital, Rogue Valley Memorial Hospital, Sacred Heart General Hospital, St. Vincent Hospital, Salem Hospitals, the Dalles General Hospital, Western Lane Hospital, Plaintiffs,

v.

Margaret HECKLER, Secretary of the Department of Health and Human Services, Defendant.

Civ. No. 83–851–FR.

United States District Court, D. Oregon.

Jan. 22, 1987.

As Amended May 4, 1987.

Gerard Keating, Atty., Dept. of Health & Human Services, Office of the General Counsel, Washington, D.C., Evelyn C. McChesney, Asst. Regional Counsel, Dept. of Health & Human Services, Office of the General Counsel, Seattle, Wash., for defendant.

Thomas Balmer, Lindsay, Hart, Neil & Weigler, Portland, Or., for plaintiffs.

FRYE, Judge:

Plaintiffs, various community hospitals throughout the State of Oregon, filed this case to recover Medicare reimbursement amounts due to them for cost reporting periods ending in 1980 and 1981. Plaintiffs challenged defendant, Secretary of Health and Human Services' (the Secretary), Malpractice Rule, 42 C.F.R. § 405.452(b)(1)(ii) (1980), adopted in 1979 (the 1979 Rule) on the grounds that it violated the Medicare Act, P.L. 89–97, Codified at 42 U.S.C. §§ 1395, et seq. On cross-motions for summary judgment, this court held that the 1979 Rule was inconsistent with the Medicare Act, *Albany General Hospital v. Heckler*, 584 F.Supp. 614 (D.Or.1984), and ordered defendant to reimburse plaintiffs in a manner consistent with its Opinion and Order of March 2, 1984.

The Secretary appealed the court's ruling. During the time of the appeal, the Secretary developed and promulgated a "new" Malpractice Rule, 51 Fed.Reg. 11142 (1986) (the 1986 Rule), which was published in final form on April 1, 1986, with an effective date of May 1, 1986. The 1986 Rule states that it replaces the 1979 Rule and applies retroactively "to cost reporting periods beginning on or after July 1, 1979." *Id.*

By order dated July 29, 1986, 796 F.2d 478, the Ninth Circuit remanded this case to the district court to consider the consequences of the Secretary's adoption of the 1986 Rule. Thus, the issue presently before the court is whether promulgation of the 1986 Rule has any effect on the judgment previously entered by this court.

## HISTORY OF THE VARIOUS RULES

Prior to the issuance of the 1979 Rule, Medicare reimbursed hospitals for the cost of malpractice insurance based upon the ratio of Medicare patient utilization of hospital services to total patient utilization of hospital services.

Under this "utilization" method of apportionment, which is the basic standard for most Medicare reimbursement, all of a hospital's "allowable" costs are assigned to particular cost centers, of which there are two types: (a) revenue-producing, and (b) non-revenue-producing. Non-revenue-producing cost centers supply services for which patients are not billed. These costs are frequently referred to as overhead costs. Housekeeping and dietary services are examples of non-revenue-producing cost centers. By contrast, a patient is specifically billed for services furnished by a revenue-producing cost center. The radiology department, operating room, and laboratory are examples of revenue-producing cost centers. The costs in non-revenue-producing cost centers, including those accumulated in the General and Administrative (G & A) cost center, are then allocated to the revenue-producing cost centers. Once allocated to a revenue-producing cost center, the total costs in each center are then apportioned to determine the proportion of costs that Medicare beneficiaries must pay, based upon the percentage of total services in that cost center utilized by Medicare patients. As the court noted above, this is the method used to determine the cost of malpractice insurance attributable to Medicare patients and for which the hos-

pitals were reimbursed by the Secretary prior to the adoption of the "Malpractice Rule." [The 1979 Rule].

*Albany General Hospital v. Heckler*, 584 F.Supp. 614, 616 (D.Or.1984).

Alarmed by increases in the cost of hospital malpractice insurance premiums, the Medicare Bureau within the Department of Health and Human Services began a study of malpractice insurance costs in 1975. The Bureau concluded that Medicare's share of a hospital's yearly malpractice insurance premium was extremely high in comparison with the amount of money actually paid on malpractice claims filed by Medicare patients. These studies led to the promulgation of the 1979 Rule, which resulted in the following system of reimbursement:

> If 99% of a hospital's patients are Medicare patients and if the hospital has paid one malpractice claim over the past five years, and that claim was paid to a Medicare beneficiary, 100% of that hospital's malpractice costs will be reimbursed by Medicare. On the other hand, if that one claim was paid to a non-Medicare patient, Medicare will not reimburse any of the hospital's malpractice costs, despite the fact that 99 percent of the patients at that hospital are Medicare patients. If no malpractice claims have been paid during the five-year period, the hospital will be reimbursed for 5.1% of its cost of providing hospital malpractice insurance, regardless of the percent of its patients which are Medicare patients and regardless of the fact that these Medicare patients have been covered by hospital malpractice insurance during all of their stay in the hospital.

*Albany General*, 584 F.Supp. at 618.

The 1979 Rule has been challenged numerous times. No appellate court has upheld the 1979 Rule. Every district court upholding the Rule has been reversed. The relevant court of appeals decisions are *Bethesda Community Hospital v. Bowen*, 795 F.2d 1004 (2nd Cir.1986); *Cumberland Medical Center v. Secretary of H.H.S.*, 781 F.2d 536 (6th Cir.1986); *Bedford County Memorial Hospital v. Heckler*, 769 F.2d

1017 (4th Cir.1985); *Menorah Medical Center v. Heckler*, 768 F.2d 292 (8th Cir.1985); *DeSoto General Hospital v. Heckler*, 766 F.2d 182, *as amended*, 776 F.2d 115 (5th Cir.1985); *Lloyd Noland Hospital and Clinic v. Heckler* 762 F.2d 1561 (11th Cir. 1985); *St. James Hospital v. Heckler*, 760 F.2d 1460 (7th Cir.), *cert. denied*, —— U.S. ——, 106 S.Ct. 229, 88 L.Ed.2d 228 (1985); *Humana of Aurora, Inc. v. Heckler*, 753 F.2d 1579 (10th Cir.), *cert. denied*, —— U.S. ——, 106 S.Ct. 180, 88 L.Ed.2d 149 (1985); *Abington Memorial Hospital v. Heckler*, 750 F.2d 242 (3d Cir.1984), *cert. denied*, —— U.S. ——, 106 S.Ct. 180, 88 L.Ed.2d 149 (1985); and *Walter O. Boswell Memorial Hospital v. Heckler*, 242 U.S.App.D.C. 110, 749 F.2d 788 (1984) (remanding with suggestion that 1979 Rule is invalid).

The Secretary seeks to avoid the application of the pre–1979 Rule by adopting the 1986 Rule, which declares itself retroactive "to cost reporting periods beginning on or after July 1, 1979."

### CONTENTIONS OF THE PARTIES

Plaintiffs argue that the 1986 Rule has no effect on the existing judgment of this court; that the 1986 Rule cannot be applied retroactively to the cost reporting periods at issue in this case; and that even if the 1986 Rule could be applied retroactively, it is invalid because it violates the Medicare Act and was promulgated in violation of the Administrative Procedures Act. Plaintiffs contend that the existing judgment remains in force and effect and requires that they be reimbursed under the pre–1979 regulations.

The Secretary first maintains that this action is moot because the 1979 Rule has been superseded by the 1986 Rule and there is no longer any controversy to decide. The Secretary argues that even if this case is not technically moot, the court should remand the controversy to the Secretary for application of the 1986 Rule. The Secretary maintains that any present challenge to the costs to be determined under the 1986 Rule is premature because the hospitals have not received the requisite final agency decision of the Secretary

necessary to maintain a challenge to that decision. In addition, the Secretary argues that if this action is not moot or proper for remand, the application of the 1986 Rule retroactively is proper and that the 1986 Rule is valid.

## MOOTNESS

The Secretary's request that this action be dismissed as moot will be denied. Plaintiffs have requested an order awarding them the sums due under the pre–1979 Rule for malpractice costs incurred for the years 1980 and 1981. The posture of the case has changed because of the promulgation of the 1986 Rule, but the promulgation of the 1986 Rule has not resolved the controversy.

## RETROACTIVITY

The court's ruling on retroactivity is central to the disposition of this case. If the court concludes that the 1986 Rule can be applied retroactively, then the court will remand the controversy to the Secretary for application of the 1986 Rule to the claims in dispute and for a final agency decision. Thereafter the validity of the 1986 Rule may be determined by this court. If the court concludes that the 1986 Rule cannot be applied retroactively, then the court will order the Secretary to pay the disputed claims in accordance with the pre–1979 reimbursement system, in which case the validity of the 1986 Rule will not become an issue in this action.

Plaintiffs argue that the retroactive application of the 1986 Rule will impose a substantial burden upon them and will serve no significant statutory interest. Plaintiffs contend that they have relied upon the pre–1979 regulations and that reimbursement under another system is inequitable and will impose a significant financial hardship upon them.

The Secretary argues that he is authorized to apply the 1986 Rule retroactively by 42 U.S.C. § 1395x(v)(1)(A)(ii) which provides:

(1)(A) The reasonable cost of any services shall be the cost actually incurred, excluding therefrom any part of incurred cost found to be unnecessary in the efficient delivery of needed health services, and shall be determined in accordance with regulations establishing the method or methods to be used, and the items to be included, in determining such costs for various types or classes of institutions, agencies, and services; except that in any case to which paragraph (2) or (3) applies, the amount of the payment determined under such paragraph with respect to the services involved shall be considered the reasonable cost of such services. In prescribing the regulations referred to in the preceding sentence, the Secretary shall consider, among other things, the principles generally applied by national organizations or established prepayment organizations (which have developed such principles) in computing the amount of payment, to be made by persons other than the recipients of services, to providers of services on account of services furnished to such recipients by such providers. Such regulations may provide for determination of the costs of services on a per diem, per unit, per capita, or other basis, may provide for using different methods in different circumstances, may provide for the use of estimates of costs of particular items or services, may provide for the establishment of limits on the direct or indirect overall incurred costs or incurred costs of specific items or services or groups of items or services to be recognized as reasonable based on estimates of the costs necessary in the efficient delivery of needed health services to individuals covered by the insurance programs established under this subchapter, and may provide for the use of charges or a percentage of charges where this method reasonably reflects the costs. Such regulations shall (i) take into account both direct and indirect costs of providers of services (excluding therefrom any such costs, including standby costs, which are determined in accordance with regulations to be unnecessary in the efficient delivery of services covered by the insurance programs estab-

lished under this subchapter) in order that, under the methods of determining costs, the necessary costs of efficiently delivering covered services to individuals covered by the insurance programs established by this subchapter will not be borne by individuals not so covered, and the costs with respect to individuals not so covered will not be borne by such insurance programs, and (ii) *provide for the making of suitable retroactive corrective adjustments where, for a provider of services for any fiscal period, the aggregate reimbursement produced by the methods of determining costs proves to be either inadequate or excessive.* (emphasis added).

The Secretary contends that the pre–1979 method of reimbursement, a method based upon the number of Medicare patients in a hospital in relation to the total number of patients in the hospital, results in the Medicare patients being overcharged because Medicare patients have fewer malpractice claims.

Plaintiffs contend that even though malpractice insurance carriers pay less in malpractice claim payments for Medicare patients, the cost of maintaining malpractice insurance for the hospitals is a fixed cost shared equally among patients as a cost of keeping the hospital in business.

The authorization to the Secretary in 42 U.S.C. § 1395x(v)(1)(A)(ii) to apply a new rule retroactively is not an unlimited authorization. A new rule cannot be applied retroactively when its application fails to conform to a statutory design or when it fails to comport with legal and equitable principles.

In order to determine whether retroactive application is proper here, the court must apply the balancing test first stated by the Supreme Court in *Securities and Exchange Commission v. Chenery Corp.,* 332 U.S. 194, 67 S.Ct. 1575, 91 L.Ed. 1995 (1947). In *Chenery,* the court permitted an agency to apply its new policy retroactively, but made clear that retroactive application of a new policy is only permitted when the burdens imposed are outweighed by the necessity of preventing the underlying statute from being misapplied. The Court stated:

> Every case of first impression has a retroactive effect, whether the new principle is announced by a court or by an administrative agency. But such retroactivity must be balanced against the mischief of producing a result which is contrary to a statutory design or to legal and equitable principles. If that mischief is greater than the ill effect of the retroactive application of a new standard, it is not the type of retroactivity which is condemned by law.

332 U.S. at 203, 67 S.Ct. at 1581, 91 L.Ed. 1995.

In determining whether the 1986 Rule can be applied retroactively the court will consider the factors set forth in *Retail, Wholesale & Department Store Union v. NLRB,* 151 U.S.App.D.C. 209, 466 F.2d 380 (1972), which states with regard to the retroactive application of an administrative rule:

> Among the considerations that enter into a resolution of the problem are (1) whether the particular case is one of first impression, (2) whether the new rule represents an abrupt departure from well established practice or merely attempts to fill a void in an unsettled area of law, (3) the extent to which the party against whom the new rule is applied relied on the former rule, (4) the degree of the burden which a retroactive order imposes on a party, and (5) the statutory interest in applying a new rule despite the reliance of a party on the old standard.

*Retail Union,* 466 F.2d at 390.

The court will now address the factors set out in *Retail Union, Id.* as they relate to the facts in this case. Not all of the factors enumerated in *Retail Union* are of equal importance or applicability here, but the relevant factors present this court with the opportunity to balance the competing interests of the parties.

The first factor is whether the case is one of first impression. As the court explained in *Retail Union,* retroactivity is sometimes appropriate in order to allow the party bringing the case the benefit of a

favorable decision and therefore to provide an incentive for private litigants to challenge unlawful rules. While this factor is not directly applicable in this case, the issue of incentive is relevant. To allow the Secretary to apply the 1986 Rule retroactively in this action would be to discourage private litigants from challenging rules that violate Congressional authority. The plaintiffs in this action have pressed this litigation for more than five years. They and others have successfully challenged the 1979 Rule. This court and others have ruled that the 1979 Rule is invalid. To allow the Secretary to adopt a new rule and apply it retroactively in a further attempt to avoid the application of the pre–1979 payment system robs the plaintiffs of their victory in this case. Should this court find the retroactive application of the 1986 Rule to be appropriate and then further find the 1986 Rule to be invalid, the Secretary would be free to return to the rulemaking process and force these plaintiffs to challenge still another rule. This result defeats the finality of the litigation process and is contrary to principles of law and equity.

The second *Retail Union* factor requires the court to address, "whether the new rule represents an abrupt departure from well established practice or merely attempts to fill a void in an unsettled area of law." The *Retail Union* court noted that retroactivity was unwarranted in "a case where the [agency] had confronted the problem before, had established an explicit standard of conduct, and now attempts to punish conformity to that standard under a new standard subsequently adopted." 466 F.2d at 391.

In this case, the Secretary sought to change a valid standard of reimbursement that had been in place since 1966 by adopting a rule in 1979 that has been held to be invalid by many courts. Clearly, the "area of law" prior to 1979 was not "unsettled."

The third *Retail Union* factor is the extent to which the party against whom the new rule is applied relied upon the former rule. The plaintiffs here relied upon the pre–1979 rule in computing and filing their claims for reimbursement for the 1980 and 1981 cost periods. They have spent considerable time and expense challenging the validity of the 1979 Rule and litigating their right to be reimbursed under the pre–1979 method. The court finds that it would be contrary to the standards of fair litigation to allow the Secretary at this stage in the proceedings to change the rule the plaintiffs must challenge.

The fourth *Retail Union* factor is the degree of the burden imposed on the plaintiffs. The expenditures for malpractice premiums for the 1980 and 1981 reporting periods have already been incurred. Under the 1986 Rule, as under the 1979 Rule, the reimbursement to plaintiffs will be substantially less than under the pre–1979 Rule. The plaintiffs will suffer a significant loss if they are denied reimbursement under the pre–1979 rule.

The final factor in *Retail Union* is the statutory interest in applying the new rule. Because hospitals are now reimbursed upon a prospective payment basis, the new rule will have minimal effect upon future reporting periods. The major effect of the rule will be to reduce the amounts to be reimbursed for past reporting periods as in this case.

The Secretary argues that the pre–1979 method of reimbursement will present the plaintiffs with a windfall. Consequently, the Secretary argues that the 1986 Rule must be applied retroactively and that 42 U.S.C. § 1395x(v)(1)(A)(ii) authorizes such application. However, the Secretary's determination that a rule must be applied retroactively is not entitled to deference. *Retail Union*, 466 F.2d at 390. The court finds that in this case the policies favoring retroactive application are wholly lacking.

In summary, the interests of the parties in this case are essentially the same. Neither party wants to pay "sky-high" medical malpractice premiums. However, there is no evidence in this record that the pre–1979 patient utilization method of reimbursement is unlawful. This court concludes that plaintiffs are entitled to reimbursement for the 1980 and 1981 reporting periods according to the pre–1979 method of

reimbursement. There can be no windfall to plaintiffs since they will be reimbursed just as they have been reimbursed since 1966.

Since the court has declined to apply the 1986 Rule retroactively to the reporting periods at issue in this case, the validity of the 1986 Rule will not be examined.

NOW, THEREFORE, IT IS HEREBY ORDERED that

1. Defendant's motion to dismiss or in the alternative for summary judgment is DENIED;

2. The "Malpractice Rule," 42 C.F.R. § 405.452(b)(1)(ii), is invalid because it is inconsistent with the substantive provisions of the Medicare Act;

3. Plaintiffs' reimbursement claims are hereby remanded to the Provider Reimbursement Review Board with directions to determine plaintiffs' reimbursement and to make payment to plaintiffs in a manner consistent with the pre–1979 Rules.