WALTER O. BOSWELL MEMORIAL
HOSPITAL, Plaintiff,

v.

Margaret M. HECKLER, Secretary of
the Department of Health and
Human Services, et al., Defendants.

HOWARD UNIVERSITY HOSPITAL,
et al., Plaintiffs,

v.

Margaret M. HECKLER, Secretary of
the Department of Health and
Human Services, et al., Defendants.

QUEEN'S MEDICAL CENTER, et
al., Plaintiffs,

v.

Margaret M. HECKLER, Secretary of
the Department of Health and
Human Services, et al., Defendants.

ALLENDALE COUNTY HOSPITAL,
et al., Plaintiffs,

v.

Margaret M. HECKLER, Secretary of
the Department of Health and
Human Services, Defendant.

MEMORIAL HOSPITAL, Plaintiff,

v.

Margaret M. HECKLER, Secretary of
the Department of Health and
Human Services, et al., Defendants.

GREATER SOUTHEAST COMMUNITY
HOSPITAL, et al., Plaintiffs,

v.

Margaret M. HECKLER, Secretary of
the Department of Health and
Human Services, Defendant.

CENTRAL PENINSULA GENERAL
HOSPITAL, et al., Plaintiffs,

v.

Margaret M. HECKLER, Secretary of
the Department of Health and
Human Services, et al., Defendants.

BEEBE HOSPITAL, et al., Plaintiffs,

v.

Margaret M. HECKLER, Secretary of
the Department of Health and
Human Services, et al., Defendants.

HOWARD UNIVERSITY HOSPITAL,
et al., Plaintiffs,

v.

Margaret M. HECKLER, Secretary of
the Department of Health and
Human Services, et al., Defendants.

GEORGE WASHINGTON UNIVERSITY
HOSPITAL, et al., Plaintiffs,

v.

Margaret M. HECKLER, Secretary of
the Department of Health and
Human Services, et al., Defendants.

HARTSELLE MEDICAL CENTER,
INC., et al., Plaintiffs,

v.

Margaret M. HECKLER, Secretary of
the Department of Health and
Human Services, Defendant.

DANIEL FREEMAN HOSPITALS, INC.
et al., Plaintiffs,

v.

Margaret M. HECKLER, Secretary of
the Department of Health and
Human Services, Defendant.

COUNTY OF LOS ANGELES,
etc., Plaintiff,

v.

Margaret M. HECKLER, Secretary of
the Department of Health and
Human Services, Defendant.

MILFORD MEMORIAL
HOSPITAL, Plaintiff,

v.

Margaret M. HECKLER, Secretary of
the Department of Health and
Human Services, et al., Defendants.

METHODIST HOSPITALS OF
MEMPHIS, et al., Plaintiffs,

v.

Margaret M. HECKLER, Secretary of
the Department of Health and
Human Services, Defendant.

Civ. A. Nos. 82–0710, 82–3259, 83–0222,
83–1092, 83–1357, 83–1903, 83–1954, 84–

**1122**

2993, 85–0730, 85–1290, 85–1706, 85–1707, 85–1753, 85–2402 **and** 85–2825.

United States District Court,
District of Columbia.

Nov. 19, 1985.
Amended Order Dec. 20, 1985.

Ronald N. Sutter, Powers, Pyles, Sutter & O'Hare, Washington, D.C., for plaintiffs.

Shalom Brilliant, U.S. Dept. of Justice, Civil Div., Gerard Keating, Mark H. Gallant, Dept. of Health and Human Services, Office of the General Counsel, Ellen Lee Park, Asst. U.S. Atty., Washington, D.C., for defendants.

## MEMORANDUM

BRYANT, Senior District Judge.

This action is before the court on both plaintiffs' and defendants' motions for summary judgment. For the reasons stated below, this court grants summary judgment for the plaintiffs, and denies defendants' motion.

### I. *Introduction*

In 1979, the Secretary of the Department of Health and Human Services ("HHS") promulgated a regulation, commonly known as the Malpractice Rule, which altered the method by which hospitals are reimbursed for the malpractice insurance expenses they incur as a result of treating Medicare patients.[1] The issue before this court is whether the Malpractice Rule is valid. Specifically, several hospitals affected by the regulation claim, first, that the basis and purpose statement accompanying the Malpractice Rule is deficient under the Administrative Procedure Act ("APA"), 5 U.S.C. § 553(c) (1982); and second, that the Malpractice Rule is arbitrary and capricious in violation of both the APA, 5 U.S.C. § 706(2)(A) and (C) (1982), and the Medicare Act, 42 U.S.C. § 1395x(v)(1)(A) (1982). The hospitals request reimbursement under the reimbursement method which preceded the Malpractice Rule.

In 1983, this court held the Malpractice Rule valid, however we did so without the benefit of the full rulemaking record. *Walter O. Boswell Memorial Hospital v. Heckler,* 573 F.Supp. 884 (D.D.C.1983). The court of appeals reviewed that decision, and remanded to this court to reassess the hospitals' challenge to the Malpractice Rule in light of the full rulemaking record. 749 F.2d 788 (D.C.Cir.1984). In its opinion, the court of appeals provided specific direction regarding how to determine the validity of the Malpractice Rule. Under the guidelines provided by the court of appeals, and in light of the full rulemaking record, the Malpractice Rule is invalid.[2]

### II. *The Basis and Purpose Statement*

■ The APA requires the Secretary to consider comments submitted to her regarding a proposed rule, and to present a "concise general statement" of the rule's "basis and purpose". 5 U.S.C. § 553(c) (1982). The basis and purpose statement must,

> enable us to see what major issues of policy were ventilated by the informal proceedings and why the agency reacted to them as it did.

*Boswell,* 749 F.2d at 794, quoting *Automotive Parts and Accessories Ass'n v. Boyd,* 407 F.2d 330, 338 (D.C.Cir.1968). The court of appeals specifically directed this court to examine the basis and purpose statement accompanying the Malpractice Rule, and to examine the comments submitted on the Rule, in order to determine whether the statement "provided sufficient insight into the issues raised," regarding three critical issues: (1) HHS's decision that reimbursement under the old definition of the "General & Administrative" cost pool subsidized non-Medicare patients at the expense of Medicare patients; (2) HHS's use of and reliance on the Westat study; and (3) HHS's consideration of a "separate-policies" alternative, and of other alternatives, to the Malpractice Rule. *Id.*

#### 1. *The G & A Pool Imbalance*

HHS generally reimburses hospitals for their Medicare related expenses by pooling several of the hospital's expenses into the "General & Administrative" ("G & A") cost pool. HHS determines the percentage of the hospital's total medical services that

---

1. A detailed statement of the facts involved in this case appears in *Walter O. Boswell Memorial Hosp. v. Heckler,* 749 F.2d 788, 790–91 (D.C.Cir. 1984).

2. Our decision also is informed by a wave of recent cases holding the Malpractice Rule invalid. *E.g., Bedford County Memorial Hosp. v. Health & Human Services,* 769 F.2d 1017 (4th Cir.1985); *Menorah Medical Center v. Heckler,* 768 F.2d 292 (8th Cir.1985); *DeSoto General Hosp. v. Heckler,* 766 F.2d 182 (5th Cir.1985); *Lloyd Noland Hosp. and Clinic v. Heckler,* 762 F.2d 1561 (11th Cir.1985); *St. James Hosp. v. Heckler,* 760 F.2d 1460 (7th Cir.1985).

are rendered to Medicare patients, and pays to the hospital that percentage of the amount in the G & A pool. *Boswell*, 749 F.2d at 794.

HHS recognizes that some individual expenses which go into the pool are consumed in greater proportion by non-Medicare patients than by Medicare patients, and that other services are consumed in greater proportion by Medicare patients than by non-Medicare patients. But when all these individual expenses are pooled together, HHS has believed, these disproportions balance each other out, and the pooling method accurately reimburses hospitals for the services they provide to Medicare patients. *Id.* at 795.

Malpractice insurance premiums formerly were one of the expenses pooled in the G & A pool. The Malpractice Rule removes this expense from the pool and reimburses it under a different formula. The Secretary acted to remove this expense because she concluded Medicare patients were recovering less in malpractice awards than non-Medicare patients, and that therefore Medicare was paying out too much in malpractice insurance reimbursements. But that conclusion alone does not justify removing malpractice insurance expenses from the pool.

> The Secretary must have implicitly determined that the old G & A pool, *taken as a whole,* had come to subsidize non-Medicare patients at the expense of Medicare patients. Without such a determination, there would be no legitimate grounds for removing malpractice premiums from the G & A pool, since the old G & A pool had long been presumed to balance costs fairly between Medicare and non-Medicare patients.

*Boswell*, 749 F.2d at 795 (emphasis in original).

In its basis and purpose statement, HHS stated that "malpractice costs are so significant and the disproportionate allocation of malpractice costs to Medicare is so great", that a "unique exception" to the pooling method is warranted. 44 Fed.Reg. 31,642 (1979). The court of appeals found that while this conclusion supports removing malpractice expenses from the G & A pool, "the precise factual basis for this conclusion ... remains obscure from the record before the district court." 749 F.2d at 795. Therefore, the court stated that,

> HHS should direct the district court to the facts upon which HHS based its conclusion that malpractice premiums are so significant and disproportionate as to bias a once balanced G & A pool, so that the reviewing court may have some idea whether comments ventilated this important consideration and whether HHS responded to them adequately.

*Id.*

HHS has failed to direct this court to any facts which support its conclusion. HHS points to the rising costs of malpractice insurance and to the "common-sense observation" that Medicare patients, who are usually over sixty-five, tend to recover less in malpractice actions then younger patients with more future earnings potential. But both those facts were already before the court of appeals, which nonetheless found HHS's basis "obscure". *Boswell*, 749 F.2d at 795. To determine that the G & A pool as a whole was unbalanced by the rising cost of malpractice insurance, HHS must have examined,

> whether other factors in the G & A pool changed during [the same] period, and what proportion malpractice premiums occupied in the pool at various times.

*Id.* at 795 n. 8. HHS has not indicated, nor do we find, that HHS ever undertook such an examination as a part of promulgating the Malpractice Rule. *See Menorah Medical Center v. Heckler,* 768 F.2d 292, 296 (8th Cir.1985).

HHS was alerted to this issue by numerous comments submitted by those opposing the Rule. Opponents argued that the G & A pool was already skewed in Medicare's favor, and they noted the many individual G & A costs which are subsidized by non-Medicare patients. *E.g.,* Plaintiffs' Appendix ("App.") at 152; 187–89; 136–37; 265–66; 269; 272–73. These comments plainly ventilated HHS's need to examine the rise

in malpractice insurance costs in the context of the relative costs of the other individual expenses in the G & A pool.

The basis and purpose statement itself contains no reference at all to the issues raised by these comments. HHS argues that it responded to these concerns when it stated in the basis and purpose statement that rising malpractice costs warrant a "unique exception" to the pooling method. 44 Fed.Reg. 31,462. But this is the very same section of the basis and purpose statement which the court of appeals has already found conclusory and wanting a substantive factual basis. *Boswell,* 749 F.2d at 795. It is an unsupported conclusion which does not address the concerns commenters raised about the legitimacy of the Malpractice Rule. "The statement failed to give the facts underlying the conclusion that malpractice premiums bias a once balanced G & A pool." *Lloyd Noland Hospital & Clinic v. Heckler,* 762 F.2d 1561, 1567 (11th Cir.1985).

The basis and purpose statement is deficient under the APA for failure to respond to the concerns raised by commenters regarding the balanced nature of the G & A pool.

### 2. *The Westat Study*

In the basis and purpose statement, HHS referred to a study conducted by a consultant which indicates that malpractice awards for Medicare and Medicaid patients are significantly lower than awards for other groups of patients. Based upon this study—the Westat study—HHS concluded that Medicare was paying a disproportionate amount of malpractice insurance premiums and thereby justified promulgating the Malpractice Rule.

The Westat study is a limited one, which was not commissioned or designed to be used in connection with promulgating the Rule. The study, as it was used by HHS, is riddled with serious defects, which have been fully canvassed by the court of appeals. *Boswell,* 749 F.2d at 796–97. The court of appeals remanded to this court to determine, in light of the full record,

whether HHS's actions, unaccompanied by any defense of the Westat study in the basis and purpose statement, was a violation of the *Automotive Parts* standard. . . .

*Id.* at 797.

The full rulemaking record reveals that HHS received voluminous comments detailing the defects in the Westat study and explaining why HHS could not rely on Westat for purposes of creating the Rule. *E.g.,* App. at 84; 117–18; 122; 134–36; 153. The problems with Westat were fully ventilated, and the basis and purpose statement contains no response to these problems. It is deficient under the APA. *Accord, Bedford County Memorial Hospital v. Health & Human Services,* 769 F.2d 1017, 1020 (4th Cir.1985); *Lloyd Noland,* 762 F.2d at 1567; *St. James Hospital v. Heckler,* 760 F.2d 1460, 1469 (7th Cir.1985).

HHS argues that it satisfactorily responded to these comments in the basis and purpose statement where it stated it was relying on the Westat study to show disproportion in Medicare patient malpractice claims. But the only reference to Westat in the basis and purpose statement merely asserts that the study,

> indicates that malpractice awards for Medicare patients are significantly lower in amount than losses for other patient population [sic].

44 Fed.Reg. 31,641. HHS cannot seriously contend that this is a response of any kind to the criticisms that had been leveled at Westat. Indeed, this passage illustrates precisely the blind reliance, "unaccompanied by any defense," which the court of appeals called into question. *Boswell,* 749 F.2d at 797. HHS baldly relies on the study, without even mentioning the many criticisms it had received.

> The preamble to the final rule contains not a word acknowledging that any commenter criticized the Westat report; far less did it make an adequate response to those criticisms.

*Abington Memorial Hospital v. Heckler,* 576 F.Supp. 1081, 1086 (E.D.Pa.1983), *aff'd.,* 750 F.2d 242 (3d Cir.1984).

HHS also argues that all the criticisms received regarding the Westat study relied on the statements of limitation in the study itself. These statements in the study supposedly have nothing to do with the Medicare reimbursement issue; therefore, no response to the criticisms was necessary. The court of appeals, however, has already precluded this argument. It found that the statements of limitation in the study "clearly apply to all conclusions drawn from it," 749 F.2d at 796 n. 11, and that cautions about the limited value of the study "would seem to apply to conclusions about malpractice size." *Id.* at 796. Comments based on the cautionary statements from the study itself were relevant and in need of response.

### 3. *The Separate-Policies Option*

HHS must consider reasonably obvious alternatives to its proposed rule, and explain its reasons for rejecting them. *Boswell,* 749 F.2d at 797. One alternative to the Malpractice Rule, the separate-policies approach, has several advantages over the Malpractice Rule, which are explained in detail by the court of appeals. *Id.* at 802–03.[3] HHS failed to discuss or even mention this option in its basis and purpose statement. The court of appeals directed this court to examine the full record to determine if HHS's failure to discuss the separate-policies option, or other alternatives suggested by commenters, violates the mandates of the APA. *Id.* at 797.

An examination of the full record reveals that several different alternatives to the Malpractice Rule were raised in numerous comments. *E.g.* App. at 318–19; 322–23; 325–26; 331; 336; 163–65. The basis and purpose statement is deficient for failing to respond to these alternatives in any way. *Accord, Lloyd Noland,* 762 F.2d at 1567. Further, the separate-policies option more closely resembles national insurance industry practice than does the Malpractice Rule. The Medicare Act specifically re-

quires HHS to consider the practices of national organizations in determining how to reimburse costs. 42 U.S.C. § 1395x(v)(1)(A). Thus the failure of HHS to respond to the separate-policies option is especially glaring. *Bedford,* 769 F.2d at 1021.

### III. *Arbitrary and Capricious Conduct*

The court of appeals also directed this court to determine if HHS's actions in promulgating the Malpractice Rule were arbitrary and capricious under the APA and in violation of the Medicare Act. *Boswell,* 749 F.2d at 798. HHS's actions were arbitrary and capricious if they,

> entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view of the product or agency expertise.

*Id.,* quoting *Motor Vehicle Manufacturers Association of the U.S. v. State Farm Mutual Automobile Ins. Co.,* 463 U.S. 29, 43, 103 S.Ct. 2856, 2866, 77 L.Ed.2d 443 (1983). The court of appeals deemed suspect three areas of HHS's conduct in this regard: (1) HHS's determination that rising malpractice insurance costs resulted in the old G & A pool being skewed in favor of non-Medicare patients; (2) HHS's failure to consider the separate-policies alternative to the Malpractice Rule; and (3) HHS's reliance on the Westat study.

Where HHS's conduct is arbitrary and capricious, it violates both the APA—which specifically prohibits such conduct—and it violates the Medicare Act. The Medicare Act requires HHS to reimburse hospitals for the "reasonable costs" of providing services to Medicare patients. 42 U.S.C. § 1395x(v)(1)(A) (1982). It is up to HHS to define reasonable cost in such a way that Medicare patients do not subsidize non-Medicare patients and that non-Medicare patients do not subsidize Medi-

---

**3.** Under the separate-policies approach, insurance companies would create separate policies for Medicare and non-Medicare patients. Medi-

care would then reimburse the hospitals only for premiums paid on the Medicare patient policy.

care patients. *Id.; Boswell,* 749 F.2d at 794. Considerable deference is owed to HHS's judgments regarding reasonable costs, as the language of the Medicare Act is ambiguous and because the authority to promulgate regulations pertaining to reasonable costs is delegated to HHS by Congress. *Id.* at 801. Therefore, we may find the Malpractice Rule in violation of the Medicare Act only if we find HHS's interpretation of the statute arbitrary and capricious: "The question of whether the Secretary violated the APA ... merges with the question of whether she violated the Medicare Act." *Id.*

### 1. HHS's Consideration of the G & A Pool Imbalance

■ As discussed in II–1, *supra,* HHS generally reimburses hospitals for their Medicare related expenses by taking many individual expenses incurred by the hospitals and pooling them together in the G & A cost center. Hospitals are reimbursed a percentage of the total amount in the cost center.

Some hospital services are consumed by Medicare patients in greater proportion to non-Medicare patients, and some are consumed by non-Medicare patients in greater proportion to Medicare patients. HHS justifies the pooling system by arguing that when the expenses incurred for providing these services are pooled in the cost center, the disproportions are balanced out, and the hospitals are fairly reimbursed. Indeed, HHS has argued against removing individual expenses which favor Medicare from the G & A pool on the grounds that these expenses are compensated for by other expenses in the pool which favor non-Medicare patients. *Boswell,* 749 F.2d at 798–99. The Malpractice Rule removes the individual expense of malpractice insurance costs from the pool, because this expense has risen to Medicare's disadvantage.

The court of appeals stated that,

It would be arbitrary and capricious for HHS to bring varying interpretations of the statute to bear, depending upon whether the result helps or hurts Medi-

care's balance sheets, without some showing that changes in the underlying balance of G & A expenses, taken as a whole, warranted breaking out malpractice premiums from the G & A pool.

*Id.* at 799 [footnote omitted]. There has been no showing by HHS that the balance of the G & A pool, "taken as a whole," has changed. *See* II–3, *supra.* It is not enough to note that malpractice insurance costs have risen sharply. HHS undertook no investigation of whether other expenses in the G & A pool which operate in favor of Medicare continue to balance out the malpractice insurance expense. *See id.* at 795 n. 8. Without such an investigation, HHS could not rationally conclude that the rising costs of malpractice insurance had unbalanced the G & A pool, and so could not justify removing those costs from the pool. HHS's conduct was arbitrary and capricious. *Accord, Menorah Medical Center v. Heckler,* 768 F.2d 292, 296 (8th Cir.1985); *Lloyd Noland,* 762 F.2d at 1568; *St. James,* 760 F.2d at 1471.

### 2. Consideration of the Separate-Policies Approach

The court of appeals stated that,

agencies must consider reasonably obvious alternatives to their proposed rule, and ... agencies should not prohibit initiatives of regulated entities that further the agency's expressed goals without offering some plausible rationale.

*Boswell,* 749 F.2d at 803. The court directed this court to decide, upon the full record, if this responsibility was fulfilled by HHS. *Id.*

The court of appeals has discussed in detail the many advantages of the separate-policies approach over the Malpractice Rule: it is an obvious alternative, and it provides a simple efficient means of furthering HHS's stated goal of reimbursing hospitals fairly for their Medicare related expenses. *Id.* at 802. HHS did not elect this method of reimbursement. Further, it removed any incentive the hospitals had for experimenting with this option by notifying the hospitals that it would not recognize

any separate insurance policy for malpractice coverage. *Id.* The court of appeals deemed this prohibition "curious" and "especially odd" as the separate-policies approach is consistent with the stated objective of HHS to provide accurate reimbursement. *Id.*

HHS points to nothing in the record indicating that this option was ever given any consideration. HHS provided no rationale, plausible or otherwise, for rejecting the option. This conduct was arbitrary and capricious under the guidelines provided by the court of appeals. *See St. James,* 760 F.2d at 1469.

### 3. *The Westat Study*

Finally, the court of appeals stated that,

reliance on a single study criticized extensively by its authors in a particular application can obviously be an arbitrary and capricious action.

*Boswell,* 749 F.2d at 803. The court instructed this court to,

carefully evaluate whether HHS's reliance on the Westat study was arbitrary and capricious in light of [the authors'] criticisms, as well as of other criticism and support of the use of the study contained in the full administrative record.

*Id.*

The court of appeals has already detailed the numerous serious flaws in Westat as it was used by HHS. *Id.* at 796–97; *see* II–2, *supra.* The study's limitations were noted by its own authors and were brought to HHS's attention by commenters. In the face of this criticism, HHS continued to rely on the study. There is no evidence in the record that it considered in any way the study's limitations or the wisdom of its continued reliance on the study. We agree with the Court of Appeals for the Tenth Circuit that HHS's reliance on the study was "irrational" as well as arbitrary and capricious. *Humana of Aurora v. Heckler,* 753 F.2d 1579, 1583. *Accord, Bedford,* 769 F.2d at 1022; *Menorah,* 768 F.2d at 295–96.

### IV. *Remedy*

HHS argues that, in the event we find the Malpractice Rule invalid, we should not order any actual payment to the hospitals, but should instead remand to the agency so it can promulgate a new, acceptable rule. HHS has made this same argument in federal courts all over the country and it has been uniformly rejected. *E.g., Bedford,* 769 F.2d at 1024; *Menorah,* 768 F.2d at 297. We agree with these courts that the proper remedy is for HHS to reimburse the hospitals the amount they would have received under the formula preceding the Malpractice Rule.

The Malpractice Rule is invalid. The hospitals are entitled to relief under the original regulations. *See Action on Smoking & Health v. C.A.B.,* 713 F.2d 795, 797–98 (D.C.Cir.1983); *Menorah,* 768 F.2d at 297; *Abington,* 750 F.2d at 244.

### ORDER

Upon consideration of the motions for summary judgment and the supporting memoranda filed by both the plaintiffs and the defendants, and the papers filed in opposition thereto, it is this 19 day of November 1985, for the reasons discussed in the accompanying Memorandum, hereby

ORDERED that the judgment this court entered in this action on September 27, 1983 is vacated; and it is further

ORDERED that plaintiffs' motion for summary judgment is granted, and defendants' motion for summary judgment is denied; and it is further

ORDERED that defendants shall pay to plaintiffs the "amount in controversy", as already determined by the Provider Reimbursement Review Board, plus interest computed to the date of payment, in accordance with 42 U.S.C. § 1395oo(f)(2), for all cost reporting years under appeal.

### AMENDED ORDER

Having considered defendants' motion to amend judgment, and plaintiffs' response thereto, it is this 20 day of December 1985, hereby

ORDERED that defendants' motion to amend judgment be, and hereby is granted; and it is

FURTHER ORDERED that the final paragraph of this court's November 19, 1985 order be, and hereby is, vacated and that the following paragraph be, and hereby is, substituted therefor:

ORDERED that defendants shall pay plaintiffs, for all cost reporting years under appeal, the amounts to which they are entitled under 42 C.F.R. § 405.-452(b)(1) (1979), without regard to the invalidated Malpractice Rule (42 C.F.R. § 405.452(b)(1)(ii) (1980)), plus interest computed to the date of payment, in accordance with 42 U.S.C. § 1395oo(f)(2).