SWEDISH HOSPITAL CORP.,
et al., Plaintiffs,

v.

Donna E. SHALALA [1], Secretary of
Health and Human Services,
Defendant.

C.A. No. 87–3534.

United States District Court,
District of Columbia.

April 5, 1993.

---

1. Substituted pursuant to Fed.R.Civ.P. 25(d).

Margaret Mary Manning, Weissburg & Aronson, Inc., Los Angeles, CA, for plaintiffs.

Julie Evelyn Billingslea, U.S. Dept. of Health & Human Services, Office of Gen. Counsel, IG Div., Washington, DC, for defendant.

## MEMORANDUM AND ORDER

BRYANT, Senior District Judge.

This memorandum addresses plaintiffs' petition for attorneys' fees in a group of cases, brought by Medicare provider hospitals, challenging the 1979 Malpractice Rule changing the method for calculating reimbursement of malpractice insurance premiums.[2] Plaintiffs prevailed on the merits. Petitioners now seek attorneys' fees and expenses under the "bad faith" fees provision of the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412(b) (1988), which provides the same relief against the government as would be available against any other party at common law. In the alternative, petitioners argue that they are entitled to attorneys' fees and expenses under 28 U.S.C. § 2412(d)(1)(A), because the "position of the United States" is not "substantially justified."

### Background

Medicare is a system of health insurance for the aged and disabled. 42 U.S.C. § 1395c (1988 & Supp. III 1991). Prior to 1979, participating provider hospitals included their medical malpractice insurance expenses in a General and Administrative ("G & A") "cost pool," along with other overhead costs, and received Medicare reimbursement proportional to the hospitals' Medicare beneficiary utilization rate. In other words, if 25% of the total services, measured in dollar value, provided by a hospital in a particular "cost year" went to Medicare patients, Medicare would reimburse the hospital for 25% of its malpractice insurance premiums for that year. The new Malpractice Rule, effective for cost reporting periods beginning July 1, 1979, removed malpractice insurance from the G & A pool, and instead reimbursed malpractice insurance expenses based upon the proportion of malpractice claims actually paid out to Medicare beneficiaries during that year and the four preceding years.[3]

---

2. The cases are consolidated with *Walter O. Boswell Memorial Hospital et al. v. Shalala,* C.A. No. 82-0710, and *Ardmore Adventist Hospital et al. v. Shalala,* C.A. No. 85-2841.

3. 44 Fed.Reg. 31,641 (1979) (*codified at* 42 C.F.R. § 405.452(b)(1)(ii) (1982); *recodified at* 42 C.F.R. § 405.452(a)(1)(ii) (1985)). If a hospital had no recorded claims for the past five years, Health and Human Services ("HHS") would pay

Preliminary research had suggested that Medicare beneficiaries receive proportionately less in malpractice claims than the non-Medicare patient population, primarily because Medicare patients are, on average, older. The Secretary of Health and Human Services ("the Secretary") anticipated saving more than three hundred million dollars each year in reimbursements under the 1979 Rule, and rushed the Rule through without proper analysis. Thousands of hospitals challenged the Rule on substantive and procedural grounds. This court, along with several others,[4] initially upheld the Rule, based upon materials submitted by the plaintiffs and the Secretary. *Walter O. Boswell Memorial Hospital v. Heckler,* 573 F.Supp. 884 (D.D.C. 1983) ("*Boswell I*"). It subsequently emerged that important documents from the administrative record had not been made available for review. The Court of Appeals, finding that this court had been "confronted with large gaps in the facts and opinions before the agency," remanded for reconsideration in light of the full eleven-volume administrative record, simultaneously spelling out detailed criteria to apply in evaluating that record. *Walter O. Boswell Memorial Hospital v. Heckler,* 749 F.2d 788, 793 (D.C.Cir. 1984) ("*Boswell II*"). On remand, this court found the basis and purpose statement accompanying the 1979 Rule to be deficient under the Administrative Procedure Act, 5 U.S.C. § 553(c) ("APA"), and the Rule to be "arbitrary and capricious" in violation of the APA, 5 U.S.C. § 706(2)(A) & (C), and the "reasonable cost" provisions of the Medicare Act, 42 U.S.C. § 1395x(v)(1)(A). *Walter O. Boswell Memorial Hospital v. Heckler,* 628 F.Supp. 1121 (D.D.C.1985) ("*Boswell III*").

On April 1, 1986, while *Boswell III* was pending on appeal on the question of remedy,[5] the Secretary promulgated a new malpractice reimbursement rule. 42 C.F.R. § 413.56 (1986).[6] The Secretary purported to apply the 1986 Rule retroactively to the cost years at issue in the 1979 Rule litigation. Alleging that the 1986 Rule replaced the 1979 Rule, the Secretary claimed that the 1986 Rule rendered all 1979 Rule cases moot. On May 23, 1986 the Secretary filed a suggestion of mootness and Motion to Vacate the district court judgments in *Boswell III.* On November 21, 1986, the Court of Appeals deferred ruling on the Secretary's motion and instead remanded the cases to this court to determine the validity of the promulgation and application of the 1986 Rule.

Before this court decided that issue, the Court of Appeals held, in an unrelated case, that the Secretary lacked the power to promulgate retroactive Medicare rules. *Georgetown University Hospital v. Bowen,* 821 F.2d 750 (D.C.Cir.1987). The Supreme court granted *certiorari* and affirmed on December 12, 1988. *Bowen v. Georgetown University Hospital,* 488 U.S. 204, 109 S.Ct. 468, 102 L.Ed.2d 493 (1988) ("*Georgetown I*"). On January 26, 1989, the Health Care Financing Administration ("HCFA") issued HCFA Ruling 89–1, indicating that Health and Human Services ("HHS") would no longer seek to apply the 1986 Malpractice Rule retroactively. Plaintiffs in the cases consolidated here would receive reimbursement, for the cost years in litigation, under the pre–1979 utilization method. On May 25, 1989, plaintiffs filed their petition for attorneys' fees.

The cases at issue in this petition did not address cost years subject to *prospective* ap-

---

what it calculated to be the national average percentage of paid malpractice claims attributable to Medicare patients, a ratio set at 5.1% for the first year.

4. *See Athens Community Hosp. v. Heckler,* 565 F.Supp. 695 (E.D.Tenn.1983); *Cumberland Medical Center v. Heckler,* 578 F.Supp. 39 (M.D.Tenn. 1983); *Humana of Aurora, Inc. v. Heckler,* C.A. No. 83–Z–70, 1983 WL 23470 (D.Colo. Sept. 19, 1983).

5. This court declined to follow HHS's suggestion of a remand to the agency to promulgate a new,

acceptable rule, pointing out that HHS "has made this same argument in federal courts all over the country and it has been uniformly rejected." *Id.,* 628 F.Supp. at 1128. Rather, "the proper remedy is for HHS to reimburse the hospitals the amount they would have received under the formula preceding the Malpractice Rule." *Id.*

6. Proposed Rule at 50 Fed.Reg. 25,178–25,188 (1985); interim Final Rule at 51 Fed.Reg. 11,-142–11,196 (1986).

plication of the 1986 Rule.[7] However, it is worth noting that on July 17, 1991, this court approved a Consent Order in a separate case, *Children's National Medical Center, et al. v. Sullivan,* C.A. No. 90–1362, providing that HHS would not enforce the 1986 Rule against the parties' cost years in litigation.[8] On September 29, 1991 HHS issued HCFA Ruling 91–1, effective the next day, indicating that HCFA would follow the *Children's National* Court Order in adjudicating other properly pending claims and appeals, paying cost claims in those pending cases according to the pre–1979 utilization method. HHS has since filed motions to dismiss in other pending cases involving prospective application of the 1986 Rule, arguing that HCFA 91–1 renders those cases moot. See *Swedish Hospital Corp., et al. v. Shalala,* C.A. No. 91–0525, 1993 WL 170951; *County of Los Angeles v. Shalala,* C.A. No. 91–2333; *La Palma Intercommunity Hospital et al. v. Shalala,* C.A. No. 91–2337. Plaintiffs in those cases continue to seek relief in the form of rescission of the 1986 Rule, arguing that the *Children's National* Consent Order does not provide sufficient protection against future application of the 1986 Rule to hospitals not party to that decree, and that HCFA 91–1 lacks the permanence rescission would provide. On the merits, plaintiffs' main argument is that the 1986 Rule does not meet the minimal requirements for lawfully replacing the pre–1979 utilization method spelled out by the Court of Appeals in *Boswell II.*

*Attorneys' Fees Under the Equal Access to Justice Act*

A. Bad Faith

 Section 2412(b) of the EAJA authorizes an award of attorneys' fees against the government "to the same extent that any other party would be liable under the common law." One of the common law's narrow exceptions to the American Rule, under which each party pays its own fees, permits awards against a losing party who has acted "in bad faith, vexatiously, wantonly, or for oppressive reasons." *Alyeska Pipeline Service Co. v. Wilderness Society,* 421 U.S. 240, 258–259, 95 S.Ct. 1612, 1622, 44 L.Ed.2d 141 (1975). Bad faith awards are made "only in extraordinary circumstances and for dominating reasons of fairness." *Nepera Chemical, Inc. v. Sea–Land Service, Inc.,* 794 F.2d 688, 702 (D.C.Cir.1986).

 Awards under the "bad faith" exception may be made for conduct before or during the litigation. *Nepera,* 794 F.2d at 701; *Hall v. Cole,* 412 U.S. 1, 15, 93 S.Ct. 1943, 1951, 36 L.Ed.2d 702 (1973). Conduct giving rise to litigation may be found in bad faith where a party, "confronted with a clear statutory or judicially-imposed duty towards another, is so recalcitrant in performing that duty that the injured party is forced to undertake otherwise unnecessary litigation to vindicate plain legal rights." *American Hospital Ass'n v. Sullivan,* 938 F.2d 216, 220 (D.C.Cir.1991) (quoting *Fitzgerald v. Hamp-*

---

**7.** The 1986 Rule applies only to expenses calculated under the "reasonable cost" system. In 1983, Congress completely restructured the method by which provider hospitals' *inpatient* expenses are reimbursed, switching from the "reasonable cost" system to what is known as the Prospective Payment System ("PPS"). Under the PPS, hospitals are informed in advance what payment they will receive for performing various types of treatment. These payments are not based on a hospital's actual costs, but rather according to a standard national rate calculated for each of approximately 470 Diagnosis Related Groups ("DRGs"). The 1983 amendments provided for a three year "phase-in period" (later extended) for conversion from the actual cost system to the DRG-based payments. The new system phased in for costs reported between October 1, 1983, and October 1, 1986. Consequently, after October 1986, only a few "PPS Exempt" hospitals, such as psychiatric hospitals

and childrens' hospitals, continue to operate primarily under the "reasonable cost" system. 42 U.S.C. § 1395ww(d)(1)(B). Some other expenses, such as outpatient services, at other hospitals are still calculated under the "reasonable cost" system. 42 U.S.C. § 1395ww(a)(4). However, in contrast to its potential impact if applied retroactively, prospective application of the 1986 Malpractice Rule is relatively limited.

**8.** The parties did not agree as to *why* the 1986 Rule was invalid. Furthermore, as to "cost reporting years subsequent to those at issue" in the litigation, HHS indicated only that it would "apply the pre–1979 utilization methodology to determine Medicare payment for plaintiffs' malpractice insurance costs ... absent a change in the law or regulations regarding Medicare payment for Malpractice insurance costs that would require a different result."

*ton*, 545 F.Supp. 53, 57 (D.D.C.1983)). *See also Vaughan v. Atkinson*, 369 U.S. 527, 530–31, 82 S.Ct. 997, 999–1000, 8 L.Ed.2d 88 (1962). Conduct during litigation that may be found in bad faith includes misconduct in discovery, *Fritz v. Honda Motor Co.*, 818 F.2d 924, 925 (D.C.Cir.1987); or dilatory tactics or misrepresentations to the court. *Lipsig v. National Student Marketing Corp.*, 663 F.2d 178, 181 (D.C.Cir.1980).

Three alleged Secretarial actions lie at the core of plaintiffs' bad faith claim:

1. Promulgation of the 1979 Rule despite knowledge that it was both procedurally defective and substantively invalid;

. . . .

3. Continuing defense of the 1979 Rule for seven years in more than 100 District Court cases and before at least eleven Courts of Appeals, despite knowledge of the Rule's defects and despite the consistent rejection by the courts of the Rule since 1983; [and]

4. Promulgation of the 1986 Rule despite knowledge that it had the same procedural and substantive defects identified by the courts in the 1979 Rule.

Brief In Support Of Plaintiffs' Petition For Attorneys' Fees ("Plaintiffs' Brief") at 2–3.

■ A finding of bad faith is a factual determination, subject to the clearly erroneous standard of review. *American Hospital Ass'n v. Sullivan*, 938 F.2d at 222. The record in this case supports a finding that the Secretary should have known that certain HHS actions could not withstand informed judicial scrutiny. As regards the 1979 Rule, the evidence suggests that the Secretary should have known, both when promulgating the 1979 Rule and when deciding to defend it against litigation, that the Rule would most likely be struck down. Similarly, the Secretary should have known that the 1986 Rule would most likely be struck down (at least in

the District of Columbia Circuit) under the criteria articulated in *Boswell II*. Recklessness is generally defined as "deliberate action in the face of a known risk, the likelihood or impact of which the actor inexcusably underestimates or ignores." *United States v. Wallace*, 964 F.2d 1214, 1220 (D.C.Cir.1992). The Secretary's actions in promulgating and defending the 1979 Rule, and in promulgating the 1986 Rule, fit this definition well. The court finds that the Secretary acted recklessly in promulgating the 1979 Rule, in defending it without realistic prospect of success, and in promulgating the equally inadequate 1986 Rule.

However, the evidence is not sufficient to support a finding that the Secretary violated a "clear statutory or judicially-imposed duty," the standard for a finding of bad faith in conduct prior to the litigation, *Fitzgerald v. Hampton*, 545 F.Supp. at 57. Similarly, the evidence does not support a finding that the Secretary's conduct *during* the litigation was in bad faith. A finding of recklessness during litigation, standing alone, is apparently insufficient to trigger the court's inherent common-law power to award bad faith attorney's fees.[9] *Cf. Wallace*, 964 F.2d at 1219–20. The *Wallace* court denied an award of fees under either 28 U.S.C. § 1927 or common law, after finding an attorney's conduct during litigation to be neither reckless nor in bad faith. In dicta, the *Wallace* court indicated that a finding of recklessness alone would be insufficient to establish bad faith.

■ In addition to the actions discussed above, the Secretary initially failed to provide this court with the entire administrative record of the 1979 Rule for judicial review. Portions of the omitted material proved devastating to the government's case. Evidence that the Secretary deliberately omitted this material would trigger a finding of bad faith. Suppression of parts of the record undermines the safeguard against arbitrary gov-

---

9. The power to award attorney's fees against a party who has acted "in bad faith, vexatiously, wantonly, or for oppressive reasons," stems from the judiciary's inherent authority. "It has long been understood that '[c]ertain implied powers must necessarily result to our Courts of justice from the nature of their institution,' powers 'which cannot be dispensed with in a Court, because they are necessary to the exercise of all others.'" *Chambers v. NASCO, Inc.*, 501 U.S. 32, ——, 111 S.Ct. 2123, 2132, 115 L.Ed.2d 27 (1991) (quoting *United States v. Hudson*, 11 U.S. (7 Cranch) 32, 34, 3 L.Ed. 259 (1812)). *See also Roadway Express, Inc. v. Piper*, 447 U.S. 752, 765–766, 100 S.Ct. 2455, 2463–64, 65 L.Ed.2d 488 (1980). The nature of this power counsels circumspection in its use.

ernment action provided by the Administrative Procedure Act. However, plaintiffs have not proven that the omission was due to other than incompetence or inadvertence.

Plaintiffs also allege bad faith in regards to a number of Secretarial actions that significantly delayed resolution of the litigation:

2. Adoption of a policy forcing thousands of hospitals to file individual administrative appeals for each cost year affected, thereby subjecting the hospitals to substantial delay and considerable unnecessary expense;

. . . . .

5. After consistent rejection of the 1979 Rule by Courts of Appeals around the country, attempting retroactive application of the 1986 Rule in an effort to terminate pending litigation and force hospitals to undertake yet another round of futile administrative appeals; and

6. Issuance of HCFA Ruling 86–2, which directed the dismissal of pending administrative appeals until issuance of revised notices of program reimbursement under the 1986 Rule, and instructing Medicare fiscal intermediaries to withhold issuance of revised notices of program reimbursement under the 1986 Rule to preclude pursuit of those appeals.

Plaintiffs' Brief at 2–3.

If the evidence supported a finding that the Secretary litigated the case in full knowledge that it had no merit, then subsequent actions taken purely to prolong the litigation would be in bad faith as well. However, absent such a finding, these individual acts cannot establish bad faith, for the reasons given below.

▮ Plaintiffs contest the Secretary's decision to litigate the same issue in every circuit. However, it follows as a necessary corollary from *United States v. Mendoza,* 464 U.S. 154, 104 S.Ct. 568, 78 L.Ed.2d 379 (1984), which held that there is no offensive non-mutual collateral estoppel against the United States, that such government behavior is lawful.

As regards "forcing" thousands of separate appeals, the secretary interpreted 42 U.S.C. § 405(h) to require exhaustion of statutory administrative remedies under § 1395oo by each individual hospital for each individual cost year, no matter how futile administrative proceedings might be.[10] Whether wisely or not, the Court of Appeals for the Tenth Circuit upheld the Secretary's interpretation in *Hadley Memorial Hospital, Inc. v. Schweiker,* 689 F.2d 905 (10th Cir.1982). Similarly, the Secretary's effort to dismiss pending 1979 Rule appeals as moot after promulgation of the 1986 Rule, forcing completely new appeals as mandated by HCFA Ruling 86–2, earned at least partial vindica-

---

**10.** The statute provided for a complex administrative review process. For cost reporting years beginning before October 1, 1983, the Medicare Act required the Secretary to reimburse providers for the "reasonable cost" incurred in providing services to Medicare patients. 42 U.S.C. § 1395f(b). Under this system, providers receive estimated interim payments throughout the year from a "fiscal intermediary," usually a private insurance company. The fiscal intermediary acts as an agent of the Secretary for purposes of reviewing providers' reimbursement claims. Each year the provider is required to file a cost report with its fiscal intermediary detailing its calculation of the actual costs of all services provided to Medicare patients during the year. After analyzing and auditing the cost report, the fiscal intermediary makes a determination of the total amount of reimbursement due the hospital for that cost year. The intermediary's determination is contained in a formal Notice of Program Reimbursement ("NPR"). The interim payments are then retroactively adjusted to bring them into conformity with the NPR.

A provider dissatisfied with the total reimbursement indicated in the NPR may appeal to the Provider Reimbursement Review Board ("PRRB"). Under the reasonable cost system, an appeal to the PRRB must await issuance of an NPR for the cost year at issue. *Washington Hospital Center v. Bowen,* 795 F.2d 139, 141 (D.C.Cir.1986). The Secretary may on his own motion affirm, modify, or reverse decisions of the PRRB within sixty days. Only final decisions of the PRRB or the Secretary may then be appealed to the appropriate United States District Court for review on the basis of the administrative record under the Administrative Procedure Act. Under a 1980 amendment, Pub.L. No. 96–499, 94 Stat. 2599, 2647, providers may also obtain direct judicial review of any action of the fiscal intermediary when the PRRB determines that it is without authority to decide the relevant question. 42 U.S.C. § 1395oo(f)(1).

In 1983, Congress introduced the Prospective Payment System ("PPS"), which fundamentally altered the method by which providers are reimbursed. *See supra,* note 7.

tion in *Appleton Memorial Hospital v. Bowen*, 814 F.2d 408, 410 (7th Cir.1987). Although colorable claims may nevertheless be found to be prosecuted in bad faith, *Lipsig v. National Student Marketing Corp.*, 663 F.2d at 182, this court is unaware of any circumstance in which a *successful* litigating position has served as the basis for a fee award. Nor can delay in issuing NPRs justify a bad faith award, where plaintiffs received interim payments under the 1986 Rule. *See* Plaintiffs' Brief at 40.

The Secretary's attempt to apply the 1986 Rule retroactively collapsed after the Supreme Court ruled unanimously, in an unrelated case, that the Secretary lacked the authority to promulgate retroactive Medicare rules. *Georgetown I*, 488 U.S. at 208, 109 S.Ct. at 471. However, a good faith claim to retroactive authority could have been made prior to *Georgetown I*, based upon *Retail, Wholesale and Department Store Union, AFL–CIO v. NLRB*, 466 F.2d 380, 390 (D.C.Cir.1972). A number of courts of appeals initially upheld promulgation of retroactive Medicare rules, as the Court noted in *Georgetown I*, 488 U.S. at 209 n. 1, 109 S.Ct. at 472 n. 1.

■ One final issue needs to be addressed. Plaintiffs argue that the court should award them fees under § 2412(b) at least in part because plaintiffs cannot be made whole by an award under § 2412(d).[11] This reasoning ignores the principle that "bad faith" awards are punitive rather than compensatory in nature. "[T]he underlying rationale of fee-shifting upon a showing of bad faith is punishment of the wrongdoer rather than compensation of the victim." *Nepera*, 794 F.2d at 702 (citing *Hall v. Cole*, 412 U.S. at 5, 93 S.Ct. at 1946). Thus the court cannot take into account the inadequacy of other remedies in determining whether or not to award fees under the common law. Consequently plaintiffs' petition for attorneys' fees under § 2412(b) must be denied.

### B. Substantially Justified

■ Section 2412(d)(1)(A) of the EAJA provides for an award of fees to certain prevailing parties "unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust."

■ The "position of the United States" means both the position taken in the civil action and the action or failure to act by the agency upon which the civil action is based. 28 U.S.C. § 2412(d)(2)(D). An agency's position is "substantially justified" if it has "a reasonable basis both in law and fact," *Pierce v. Underwood*, 487 U.S. 552, 565, 108 S.Ct. 2541, 2550, 101 L.Ed.2d 490 (1988); that is, if it is "justified to a degree that could satisfy a reasonable person." *Id.*

■ Once a party has prevailed, the burden shifts to the United States to show that its position is "substantially justified." *Jones v. Lujan*, 887 F.2d 1096, 1098 (D.C.Cir.1989) ("*Jones II* "). The inadequacies in the government's conduct as regards the 1979 Rule, discussed at length in *Boswell III*, will be briefly reviewed here. *Boswell III* focused on three areas to which the Court of Appeals indicated this court should pay "particular attention": the G & A pool imbalance, the Westat Study, and the separate-policies alternative to the Malpractice Rule. *Boswell II*, 749 F.2d at 795. This court found the Secretary's actions to be unreasonable in every case.

---

**11.** Relief under the "substantially justified" provisions of the EAJA is not available to all plaintiffs. Under the "substantially justified" test, only certain litigants are defined as parties eligible for fees:

"party" means (i) an individual whose net worth did not exceed $2,000,000 at the time the civil action was filed, or (ii) any owner of an unincorporated business, or any partnership, corporation, association, unit of local government, or organization, the net worth of which did not exceed $7,000,000 at the time the civil action was filed, and which had not more than 500 employees at the time the civil action was filed; except that an organization described in section 501(c)(3) of the Internal Revenue Code of 1954 (26 U.S.C. 501(c)(3)) exempt from taxation under section 501(a) of such Code, or a cooperative association as defined in section 15(a) of the Agricultural Marketing Act (12 U.S.C. 1141j(a)), may be a party regardless of the net worth of such organization or cooperative association.
28 U.S.C. § 2412(d)(2)(B).

Under the "reasonable cost" system, the Medicare Act forbids "cost-shifting" between Medicare and non-Medicare patients. 42 U.S.C.§ 1395x(v)(1)(A). As regards the G & A pool, the Court of Appeals wrote:

> The Secretary must have implicitly determined that the old G & A pool, *taken as a whole*, had come to subsidize non-Medicare patients at the expense of Medicare patients. Without such a determination, there would be no legitimate grounds for removing malpractice premiums from the general G & A pool, since the old G & A pool had long been presumed to balance costs fairly between Medicare and non-Medicare patients.

*Boswell II,* 749 F.2d at 795 (emphasis in original).

■ The Court of Appeals indicated that "HHS should direct the district court to the facts upon which HHS based its conclusion that malpractice premiums are so significant and disproportionate as to bias a once balanced G & A pool...." *Id.* On remand, this court noted that "HHS has failed to direct this court to *any* facts which support its conclusion" *Boswell III,* 628 F.Supp. at 1124 (emphasis added). As explained in *Boswell II,* the Westat study provided the primary statistical support for the 1979 Rule. The Court of Appeals instructed this court to "carefully evaluate whether HHS's reliance on the Westat study was arbitrary and capricious in light of [the authors'] criticisms, as well as of other criticisms and support of the use of the study contained in the full administrative record." *Boswell II,* 749 F.2d at 803. This court found that "[t]here is *no evidence* in the record that it [HHS] considered in any way the study's limitations or the wisdom of its continued reliance on the study. We agree with the Court of Appeals for the Tenth Circuit that HHS's reliance on the study was 'irrational' as well as arbitrary and capricious. *Humana of Aurora v. Heckler,* 753 F.2d 1579, 1583 [ (10th Cir.1985) ]." *Boswell III,* 628 F.Supp. at 1128 (emphasis added). *Accord, Bedford County Memorial Hospital v. HHS,* 769 F.2d 1017, 1022 (4th Cir.1985); *Menorah Medical Center v. Heckler,* 768 F.2d 292, 295–96 (8th Cir.1985). Finally, as regards the "separate-policies" option, the Court of Appeals indicated that "agencies must consider reasonably obvious alternatives to their proposed rule." *Boswell II,* 749 F.2d at 803. Requiring separate malpractice insurance policies for Medicare and non-Medicare patients appeared to represent an obvious solution to the problem that the 1979 Rule ostensibly sought to solve. However, this court found that "HHS provided *no rationale, plausible or otherwise,* for rejecting the [separate policies] option." *Boswell III,* 628 F.Supp. at 1128 (emphasis added). The position of the United States as regards the 1979 Rule is clearly not "substantially justified," nor are any special circumstances present which would make an award unjust. *Accord, Baptist Hospital of Miami v. Bowen,* C.A. No. 83–1005, 1988 WL 235569 (S.D.Fl. Jan. 13 1988); *Bedford County Memorial Hospital v. Bowen,* C.A. No. 83–0386–R, 1986 WL 68496 (W.D.Va. Oct. 1 1986); *Alexandria Hospital v. Bowen,* C.A. No. 83–0233–R, 1986 WL 68494 (E.D.Va. Aug. 7 1986).

The *Baptist Hospital* court also indicated that retroactive application of the 1986 Rule was not substantially justified, and this court agrees. No application of the 1986 Rule could be substantially justified, because under the clear procedural and substantive guidelines provided by the Court of Appeals in *Boswell II,* neither the promulgation of the 1986 Rule, nor the 1986 Rule itself, are substantially justified.

■ First, as the Court of Appeals explained in *Boswell II,* under the requirements of the APA and the Medicare Act, the Secretary cannot remove an isolated item from the G & A pool without first establishing in its "basis and purpose" statement that the G & A pool, *taken as a whole,* is unbalanced against Medicare beneficiaries. *Id.* at 794–98. As with the 1979 Rule, the Secretary completely failed to establish this lack of balance.[12] The 1986 Rule was not accompa-

---

12. The Secretary essentially conceded as much in responding to comments on the 1986 Rule. "[A]ny study of the constituents of the G & A pool would be impossible," 51 Fed.Reg. 11,142, 11,167 (1986); "[T]he flexibility provided under Medicare reimbursement practices with respect

nied by such a basis and purpose statement, in clear violation of the APA, 5 U.S.C. § 553(c).

Second, because it removed a single item from the G & A pool "without some showing that changes in the underlying balance of the G & A expenses, taken as a whole, warranted breaking out malpractice premiums from the G & A pool," the 1986 Rule was clearly arbitrary and capricious, in violation of the APA, 5 U.S.C. § 706(2)(A), and in violation of the prohibition on "cost-shifting" in the Medicare Act. 42 U.S.C. § 1395x(v)(1)(A). *Boswell II,* 749 F.2d at 799.[13]

Given the clarity of the *Boswell II* mandate, the legal inadequacies of the 1986 Rule would be clear to any reasonable person. Consequently, the 1986 Rule is not "substantially justified" in its promulgation, its substance, nor in its application. There are no special circumstances as regards the 1986 Rule that would make an award of fees unjust. Consequently plaintiffs' petition for attorneys' fees under § 2412(d)(1)(A) is granted.

The Malpractice Rule litigation is just the sort of imbroglio for which Congress enacted the anti-bullying provisions of the EAJA. Those plaintiffs who are "parties" under § 2412(d)(1)(A) are well entitled to their fees.

to reporting G & A costs makes a more precise differentiation between Medicare and non-Medicare costs virtually impossible." *Id.* at 11,159. It may well be impossible for the Secretary to satisfy the mandate of the *Boswell II* court. However, such impossibility does not bring the *Boswell II* court's criteria into question. It simply indicates that it may be impossible, under the current statute, given the longstanding presumption that the G & A pool is balanced, to provide a rational basis for removing an isolated item from the G & A pool.

13. The government has asserted that plaintiffs have not "prevailed" under the EAJA as regards "the validity of the 1986 Rule as prospectively applied," given that "no court has invalidated it." Defendant's Opposition to Plaintiffs' Petition For Attorneys' Fees at 49. The government's premise is incorrect. It is well settled that parties may "prevail" on an issue, for purposes of the EAJA, absent a final judgment on the merits. *Lundin v. Mecham,* 980 F.2d 1450, 1457 (D.C.Cir.1992); *Public Citizen Health Research Group v. Young,* 909 F.2d 546, 550 (D.C.Cir. 1990); *Jones v. Lujan,* 883 F.2d 1031, 1033 (D.C.Cir.1989) ("*Jones I*").

Plaintiffs' Petition For Attorneys' Fees is DENIED in part and GRANTED in part. It is so ordered.

To determine whether a party has prevailed in a case in which judicial relief has not been awarded, the court inquires "(1) whether the party received a significant part of the relief it sought; and (2) whether the lawsuit was a necessary or substantial factor in obtaining the result." *Lundin v. Mecham,* 980 F.2d at 1457. *See also Tucson Medical Center v. Sullivan,* 947 F.2d 971, 982 (D.C.Cir.1991); *Public Citizen v. Young,* 909 F.2d at 550. Through dogged litigation, plaintiffs succeeded in forcing the Secretary to return to the pre–1979 utilization method of calculating Medicare malpractice insurance reimbursement, at least as regards their claims. In addition, this court rests its holding that the government's conduct in applying the 1986 Rule retroactively to plaintiffs was not substantially justified on a finding that due to fundamental procedural and substantive flaws, the 1986 Rule itself is illegal and not substantially justified, *however* applied. Consequently plaintiffs have necessarily "prevailed," for purposes of the EAJA, on the issue of the validity of the 1986 Rule as "prospectively" applied.